**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOHNNIE A. CANADY; NANCY
CANADY,
<u>Plaintiffs-Appellees,</u>

v.                                                No. 95-2934

CRESTAR MORTGAGE CORPORATION,
<u>Defendant-Appellant.</u>

JOHNNIE A. CANADY; NANCY
CANADY,
<u>Plaintiffs-Appellants,</u>

v.                                                No. 95-2977

CRESTAR MORTGAGE CORPORATION,
<u>Defendant-Appellee.</u>

Appeals from the United States District Court
for the Eastern District of North Carolina, at Elizabeth City.
Terrence W. Boyle, District Judge.
(CA-94-20-2-BO2)

Argued: January 29, 1997

Decided: March 31, 1997

Before MURNAGHAN, NIEMEYER, and MOTZ, Circuit Judges.

_____

Affirmed in part and reversed and remanded in part by published
opinion. Judge Murnaghan wrote the opinion, in which Judge Nie-
meyer and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Margaret Cain Lumsden, HUNTON & WILLIAMS,
Raleigh, North Carolina, for Appellant. Roy A. Archbell, Jr., Kitty
Hawk, North Carolina, for Appellees. **ON BRIEF:** Michael L. Unti,
HUNTON & WILLIAMS, Raleigh, North Carolina, for Appellant.

_____

**OPINION**

MURNAGHAN, Circuit Judge:

Plaintiffs-Appellees Johnnie and Nancy Canady (the"Canadys")
held a third-priority deed of trust on a parcel of real estate.
Because
they feared that the property did not contain enough equity to
secure
their third-priority deed of trust, they entered into a contract to
pur-
chase the first-priority deed of trust from Crestar Mortgage
Corpora-
tion ("Crestar"). Due to a clerical error, however, when the
Canadys
paid the purchase price for the first-priority deed of trust,
Crestar mis-
takenly cancelled the first-priority deed of trust rather than
assigning
it to the Canadys as the contract provided. Crestar, as it turned
out,
could not correct its mistake because the owners of the property
filed
for bankruptcy the next day.

The Canadys filed suit and alleged a breach of contract claim and
an unfair trade practices claim pursuant to the North Carolina
Unfair
and Deceptive Trade Practices Act ("UTPA"), N.C. Gen. Stat. § 75-
1.1 (1995). The district court granted summary judgment to the
Cana-
dys and awarded compensatory damages plus interest, but the court
denied the UTPA claim. Crestar has now appealed the amount of
compensatory damages that the district court awarded, and the Cana-
dys have cross-appealed the interest calculation and the
disposition of
the UTPA claim. For the reasons stated below, we affirm in part,
reverse in part, and remand for further proceedings.

I.

Glen and Sandra Magill (the "Magills") owned real estate in Nags
Head, North Carolina subject to three deeds of trust. Crestar held
the

first-priority deed of trust (the "Crestar Deed of Trust"), David and Janet Storms held the second-priority deed of trust (the "Storms Deed of Trust"), and the Canadys held the third-priority deed of trust (the "Canady Deed of Trust"). In May 1993, the Canadys, concerned that the Magills did not have sufficient equity in the property to protect their third-priority deed of trust, contracted with Crestar to purchase the first-priority Crestar Deed of Trust for $53,511.30.

On May 27, 1993, the Canadys tendered $53,511.30 to Crestar. Due to a clerical error, however, Crestar mistakenly treated the Crestar Deed of Trust as paid off instead of assigning it to the Canadys as the contract provided. On July 19, 1993, Crestar cancelled the Crestar Deed of Trust. The next day, the Magills filed for bankruptcy, which froze the liens on the property and barred Crestar from correcting its mistake. The Canadys learned of Crestar's mistake on July 28, 1993, and they demanded that Crestar refund the $53,511.30 purchase price on August 10, 1993. In February 1994, Crestar offered to refund the $53,511.30, but the Canadys declined the offer because Crestar refused to pay interest on the money.

The bankruptcy trustee sold the property to an unrelated third party for $63,000. After deducting sales expenses, $55,000 remained for distribution to the estate's creditors. On April 1, 1994, the bankruptcy trustee, the Canadys, and Crestar entered into a consent decree issued by the bankruptcy court. The consent decree provided that Crestar's prebankruptcy cancellation of the first-priority Crestar Deed of Trust rendered that deed of trust inoperative. The decree further provided that the Storms Deed of Trust would take first priority and that the Canady Deed of Trust would take second priority. Accordingly, the trustee distributed $14,899.21 of the proceeds from the sale of the property to the Storms to pay off the Storms Deed of Trust and $33,750 to the Canadys to pay off the Canady Deed of Trust.

On May 13, 1994, the Canadys sued Crestar in the Superior Court of Dare County, North Carolina. They alleged breach of contract and violations of the UTPA, N.C. Gen. Stat. § 75-1.1 (1995). Crestar

removed the action to the United States District Court for the Eastern District of North Carolina based on diversity of citizenship and the requisite amount in controversy. After discovery, both Crestar and the Canadys filed motions for summary judgment on all issues.

3

On October 12, 1995, the district court entered summary judgment in favor of the Canadys on the breach of contract claim and awarded $53,511.30 in compensatory damages plus interest at the legal rate of eight percent from August 10, 1993 through February 1, 1994. The court granted summary judgment in favor of Crestar on the UTPA claim. Crestar and the Canadys both appealed. We review the district court's grant of summary judgment <u>de novo</u>. <u>See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.</u>, 43 F.3d 922, 928 (4th Cir. 1995).

II.

As noted above, the district court awarded the full $53,511.30 purchase price of the Crestar Deed of Trust to the Canadys as compensatory damages for Crestar's breach of the contract. The court refused to reduce that award by the $33,750 that the Canadys received under the former third-priority Canady Deed of Trust. The court held that Crestar's mistaken cancellation of the Crestar Deed of Trust was "not causally related" to the amount that the Canadys received under the Canady Deed of Trust from the bankruptcy distribution.

North Carolina law provides that the proper measure of damages for breach of contract is the amount necessary to put the injured party in the same monetary position that it would have been in if the breach had not occurred. <u>See Roberson v. Dale</u>, 464 F.Supp. 680, 683 (M.D.N.C. 1979); <u>Weyerhaeuser Co. v. Godwin Bldg. Supply Co.</u>, 234 S.E.2d 605, 607 (N.C. 1977). Therefore, the plaintiff must prove what she would have received had the contract not been breached and what she did in fact receive. In order to prevent a double recovery, courts offset any amount that mitigates damages from the damage award. <u>See Tillis v. Calvine Cotton Mills, Inc.</u>, 111 S.E.2d 606, 613-14 (N.C. 1959).

The issue in the instant case is what the Canadys would have received if Crestar had not breached the contract by cancelling the Crestar Deed of Trust. It seems clear to us that if Crestar had not cancelled the Crestar Deed of Trust, the Canadys would have recovered under the Crestar Deed of Trust, but they would not have recovered under the Canady Deed of Trust. At the time of the bankruptcy, the payoff amount required to satisfy the Crestar Deed of Trust was

4

$57,250.96. The bankruptcy trustee sold the property to a disinterested third party for $63,000, and $55,000 remained for distribution to the estate's creditors after the trustee deducted sales expenses. Therefore, if Crestar had not mistakenly cancelled the Crestar Deed of Trust and had instead assigned the deed to the Canadys as the contract provided, the Canadys would have received the $55,000 sales proceeds under the Crestar Deed of Trust. That amount, however, would have exhausted the sales proceeds. The Storms would not have received any money under the second-priority Storms Deed of Trust, and the Canadys would not have received any money under the third-priority Canady Deed of Trust. Thus, the district court erred when it held that Crestar's cancellation of the Crestar Deed of Trust was "not causally related" to the money that the Canadys received under the Canady Deed of Trust. The Canadys would not have received any money under the Canady Deed of Trust if Crestar had not cancelled the Crestar Deed of Trust. The Canadys therefore received a double recovery when the district court awarded the full $53,511.30 purchase price in addition to the $33,750 that the Canadys had already received under the Canady Deed of Trust. Since the Canadys only would have received $55,000 if Crestar had not breached the contract, that is all that the Canadys may recover. Thus, since the Canadys had already received $33,750, the most that the district court should have awarded was $21,250.

The Canadys' arguments to the contrary do not persuade us. The Canadys contend that they would have received more than $55,000 if Crestar had not cancelled the Crestar Deed of Trust. They claim that if Crestar had assigned the Crestar Deed of Trust to them as the contract provided, then they would have bid for the property at the bankruptcy sale. They claim that they would have bid the sales price up to an amount sufficient to pay off all three liens on the property, an amount in excess of $105,000. They therefore contend that the district court correctly found that Crestar's cancellation of the Crestar Deed of Trust was "not causally related" to the money that they received under the Canady Deed of Trust; they contend that they would have recovered that money even if Crestar had not breached the contract.

However, as stated above, the correct measure of damages under

North Carolina law is an amount sufficient to put the injured party in

the monetary position that it would have been in had the breach not occurred. See Roberson, 464 F.Supp. at 683. The Canadys therefore bear the burden of proving what they would have received if Crestar had not breached the contract. They proffered no evidence of the market value of the property or of another buyer that would have paid a higher price.

The North Carolina Supreme Court has held that the price that a purchaser voluntarily paid for real estate evidences the market value of the property. See Heath v. Mosley, 209 S.E.2d 740, 741 (N.C. 1974). In the instant case, the $63,000 that the trustee obtained from the disinterested third party at the bankruptcy sale is the only evidence in the record regarding the market value of the property. The Canadys did not produce any evidence that suggests a higher value in opposition to Crestar's summary judgment motion.

Thus, the only evidence in the record reveals that the property was worth only $63,000. If Crestar had not breached the contract, the Canadys would have received $55,000 under the Crestar Deed of Trust after the trustee's deduction of the costs of the bankruptcy sale. After the breach, they received $33,750. Thus, in order to prevent a double recovery, the district court should have only awarded $21,250. That result seems particularly appropriate since the higher price that the Canadys hypothecated would merely lead them to pay out money so that it could be paid in to them.

III.

The district court awarded interest on the compensatory damages award at the legal rate of eight percent from August 10, 1993, the date that the Canadys demanded a refund of their money, through February 1, 1994, the date that Crestar offered to refund the purchase price. The Canadys' notice of appeal asserted that the district court erred in "failing to award the Plaintiffs interest on their judgment at the contractual rate of interest; [and] failing to award Plaintiffs interest at either the contractual rate or the legal rate from and after February of 1994."

A.

In their appellate brief, however, the Canadys failed to argue, or even mention, that the district court should have applied the contrac-

6

tual rate of interest instead of the legal rate of interest. Thus, the Canadys have waived any argument that the district court should have applied the contractual rate of interest. See Williams v. Chater, 87 F.3d 702, 706 (5th Cir. 1996) (holding that issues raised in notice of appeal but not briefed on appeal are deemed waived); Cumberland Farms, Inc. v. Montaque Econ. Dev. and Indus. Corp. , 78 F.3d 10, 12 n.1 (1st Cir. 1996) (holding that appellant waived an issue raised in the notice of appeal when it did not refer to the issue in its brief); Tilson v. Forrest City Police Dep't, 28 F.3d 802, 806 n.8 (8th Cir. 1994) (holding that appellant waived issues that it raised in notice of appeal but failed to brief on appeal), cert. denied, 115 S.Ct. 1315 (1995). The Canadys conceded during oral argument that they had waived any argument regarding the contractual rate of interest, and we therefore do not consider the issue.

B.

In their brief and during oral argument, the Canadys presented two arguments regarding the district court's interest calculation. They argued that the district court erred in holding that the interest did not begin to run until August 10, 1993 when the Canadys demanded a refund of the purchase price, and they argued that the district court erred in holding that the interest stopped running on February 1, 1994 when Crestar offered to refund the purchase price. However, the Canadys only designated the latter issue in their notice of appeal. They only appealed the portion of the district court's judgment that failed to award interest after February 1, 1994; they did not specifi- cally appeal the district court's starting date of August 10, 1993. Thus, Crestar contends that the Canadys waived their right to appeal the starting date because they failed to specify the issue in their notice of appeal.

We hold, however, that the Canadys did not waive the issue. Fed- eral Rule of Appellate Procedure 3(c) sets out the requirements for a notice of appeal:

A notice of appeal must specify the party or parties taking

the appeal by naming each appellant in either the caption or
the body of the notice of appeal. . . . A notice of appeal
also
<u>must designate the judgment, order, or part thereof</u>

7

<u>appealed from</u>, and must name the court to which the appeal is taken.

Fed. R. App. P. 3(c) (emphasis added). In order to avoid technical impediments to appellate review, we construe Rule 3(c) liberally. <u>See</u> <u>United States v. Garcia</u>, 65 F.3d 17, 19 (4th Cir. 1995).

In <u>Foman v. Davis</u>, 371 U.S. 178 (1962), the Supreme Court addressed the consequences of an appellant's failure to specify a par- ticular portion of a judgment in a notice of appeal. The Supreme Court held that courts could overlook such a defect as long as the faulty notice "did not mislead or prejudice" the appellee. <u>Id.</u> at 181. In reaching that conclusion, the Court stated:

> It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of . . . mere technicalities.
> "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be deci- sive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."

<u>Id.</u> at 181-82 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 48 (1957)).

Several courts of appeal have subsequently held that an error in designating the issue appealed will not result in a loss of appeal as long as "`the intent to appeal a specific judgment can be fairly inferred and the appellee is not prejudiced by the mistake.'" <u>Lynn v.</u> <u>Sheet Metal Workers' Int'l Ass'n</u>, 804 F.2d 1472, 1481 (9th Cir. 1986) (quoting <u>United States v. One 1977 Mercedes Benz</u>, 708 F.2d 444, 451 (9th Cir. 1983)), <u>aff'd</u>, 488 U.S. 347 (1989). <u>See also</u> <u>Badger</u> <u>Pharmacal, Inc. v. Colgate-Palmolive Co.</u>, 1 F.3d 621, 625-26 (7th Cir. 1993). In determining whether "intent" and "prejudice" exist, courts have examined "whether the affected party had notice of the issue on appeal; and . . . whether the affected party had an opportunity to fully brief the issue." <u>Lynn</u>, 804 F.2d at 1481. Courts also have held that when the appellant addresses the merits of a particular issue in her opening brief, "this is enough to demonstrate that the appellee had notice of the issue and did not suffer prejudice . .. ." <u>Levald, Inc. v.</u> <u>City of Palm Desert</u>, 998 F.2d 680, 691 (9th Cir. 1993).

In the instant case, the Canadys argued the merits of the starting date of the interest issue in their opening cross-appeal brief, and Crestar fully responded to their claim in its brief. Thus, Crestar clearly had notice of the issue and was not taken by surprise or in any way prejudiced. Accordingly, the Canadys' failure to designate the district court's starting date for the interest in their notice of appeal did not waive their right to assert the issue on appeal. We therefore consider whether the district court erred in setting both the starting date and the ending date for the interest.

C.

The applicable North Carolina statute awards interest on damages resulting from a breach of contract from the date of breach until the judgment is satisfied. See N.C. Gen. Stat.§ 24-5 (1995); Craftique, Inc. v. Stevens & Co., 364 S.E.2d 129, 132 (N.C. 1988). Thus, the district court erred in holding that the interest would not run until August 10, 1993. Under North Carolina law, interest runs from the date of the defendant's breach, not the date of the plaintiff's demand for a refund.

Crestar appears to concede that point, and it only contests the Canadys' argument that Crestar breached the contract on May 27, 1993. We agree with Crestar that the breach occurred on July 19, 1993 when Crestar cancelled the deed of trust. Although the Canadys paid the purchase money to Crestar on May 27, 1993, no evidence suggests that Crestar was bound under the terms of the contract to assign and deliver the Crestar Deed of Trust on the same day. The evidence reveals instead that Crestar breached the contract on July 19, 1993 when it cancelled the deed of trust rather than assigning it to the Canadys as the contract provided.

The district court also erred when it held that interest would run only until February 1, 1994. Crestar had offered to refund the $53,511.30 purchase price, without interest, to the Canadys on that date. In order to constitute a valid tender and thus stop the running of interest, however, a defendant's settlement offer must include the full amount that the plaintiff is entitled to receive plus all interest due

to the date of the offer. <u>See Hardy-Latham v. Wellons</u>, 415 F.2d 674,
679 (4th Cir. 1968); <u>Ingold v. Phoenix Assurance Co.</u>, 52 S.E.2d 366,
370 (N.C. 1949). Thus, since Crestar refused to pay interest when it

9

made its offer in February 1994, even though it had held the Canadys' money for over eight months, its offer did not stop the statutory running of interest.

Therefore, the district court erred in awarding interest from August 10, 1993 through February 1, 1994. The court should have awarded interest from July 19, 1993 until the judgment is satisfied.

IV.

The Canadys finally contend that the district court erred in failing to award treble damages and attorney's fees pursuant to the UTPA, N.C. Gen. Stat. §§ 75-1.1, -16, -16.1 (1995). The UTPA prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." § 75-1.1(a). If the trial court finds that the defendant has violated the UTPA, it must award treble damages, and it may, in its discretion, award attorney's fees. §§ 75-16, -16.1.

The North Carolina Supreme Court has held that a practice is "unfair" under the UTPA "when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." <u>Marshall v. Miller</u>, 276 S.E.2d 397, 403 (N.C. 1981). A mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under the UTPA. <u>See United Roasters, Inc. v. Colgate-Palmolive Co.</u>, 649 F.2d 985, 992 (4th Cir. 1981); <u>Branch Banking & Trust Co. v. Thompson</u>, 418 S.E.2d 694, 700 (N.C. Ct. App. 1992). The plaintiff may only recover under the UTPA if he or she demonstrates substantial aggravating circumstances attending the breach. <u>See Bartolomeo v. S.B. Thomas, Inc.</u>, 889 F.2d 530, 535 (4th Cir. 1989); <u>Branch Banking & Trust Co.</u>, 418 S.E.2d at 700.

The Canadys concede on appeal that Crestar's inadvertent breach of contract in cancelling the deed of trust does not suffice to maintain an action under the UTPA. They contend instead that Crestar's conduct in refusing to return the Canadys' purchase money constitutes an unfair practice.* In support of their UTPA claim, the Canadys rely

*Crestar contends that the Canadys only argued below that Crestar's breach of contract constituted an unfair practice. Crestar therefore argues

solely on <u>Barbee v. Atlantic Marine Sales & Serv., Inc.</u>, 446 S.E.2d 117 (N.C. Ct. App. 1994). In that case, the defendant, a boat manufacturer, refused to remedy a defect in a boat that it had manufactured. The North Carolina Court of Appeals upheld the trial court's finding of an unfair trade practice because the defendant failed to make any "offer of concession, such as offering to credit the price plaintiffs had paid for their boat toward a new boat." <u>Id.</u> at 121.

Unlike the defendant in <u>Barbee</u>, however, Crestar did offer to refund the full $53,511.30 purchase price. The Canadys correctly point out that Crestar held their money for over eight months before it offered to refund the purchase price. However, the bankruptcy trustee did not advise the parties that he would oppose any secured claim asserted under the Crestar Deed of Trust until then. Crestar thus offered to return the Canadys' purchase money as soon as it became clear from the bankruptcy court that its mistake was irreversible. Crestar's decision to wait until the bankruptcy trustee decided whether the Crestar Deed of Trust was valid and Crestar's legitimate, albeit incorrect, refusal to pay interest on the money do not rise to the level of immoral, unethical, oppressive, unscrupulous, or substantially injurious trade practices. Therefore, the district court correctly found that the Canadys were not entitled to treble damages or attorney's fees because Crestar did not violate the UTPA.

V.

Accordingly, we affirm the district court's denial of treble damages and attorney's fees pursuant to the UTPA. However, we reverse the district court's compensatory damages award and interest calculation. On remand, the district court should reduce the compensatory dam-

_____

that the Canadys may not assert an argument on appeal that the retention of the purchase price constituted an unfair practice because they did not raise that argument below.

However, the district court's opinion clearly reveals that the Canadys
raised both arguments below, and the district court addressed both argu-
ments. The Canadys therefore have not waived their right to raise the
argument on appeal.

11

ages award to $21,250, and the statutory rate of interest should run
from July 19, 1993 until the judgment is satisfied.

<u>AFFIRMED IN PART AND REVERSED</u>
<u>AND REMANDED IN PART</u>

12