**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 97-6735

WILLIAM WISE MURRAY,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Dennis W. Shedd, District Judge.
(CR-93-470, CA-97-231)

Argued: March 2, 1999

Decided: April 6, 1999

Before WIDENER, WILLIAMS, and MICHAEL, Circuit Judges.

_____

Vacated in part, dismissed in part, and remanded by unpublished per
curiam opinion.

_____

**COUNSEL**

**ARGUED:** Michael S. Caldwell, Student Counsel, Appellate Litiga-
tion Program, GEORGETOWN UNIVERSITY LAW CENTER,
Washington, D.C., for Appellant. John Michael Barton, OFFICE OF
THE UNITED STATES ATTORNEY, Columbia, South Carolina, for
Appellee. **ON BRIEF:** Steven H. Goldblatt, Director, Laura A. Dick-
inson, Student Counsel, Appellate Litigation Program, GEORGE-
TOWN UNIVERSITY LAW CENTER, Washington, D.C., for

Appellant. J. Rene Josey, United States Attorney, Marshall Prince, Assistant United States Attorney, Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

A jury convicted William Wise Murray of armed bank robbery in violation of 18 U.S.C.A. § 2113(a) & (d) (West Supp. 1999). He was subsequently sentenced to 300 months imprisonment. After an unsuccessful direct appeal, see United States v. Murray, 65 F.3d 1161 (4th Cir. 1995), Murray moved the United States District Court for the District of South Carolina to vacate, set aside, or correct his sentence, see 28 U.S.C.A. § 2255 (West 1994 & Supp. 1998).[1] In his motion, Murray raised several claims of ineffective assistance of counsel with respect to his sentencing. The district court granted summary judgment to the Government and denied Murray's request for a Certificate of Appealability. On appeal, we conclude that Murray has made a substantial showing of the denial of a constitutional right on one of his ineffective assistance of counsel claims. Accordingly, we grant Murray's request for a Certificate of Appealability on that claim, see 28 U.S.C.A. § 2253(c)(2) (West Supp. 1998), vacate that portion of the district court's order, and remand for resentencing.

I.

On October 25, 1993, Murray entered a credit union and demanded money from a teller, pointing at the money and stating "give me that."

_____

[1] Although Murray proceeded pro se before the district court, he was ably represented by the Georgetown University Law Center Appellate Litigation Program before this Court.

2

(S.A. at 4.) Believing that the teller triggered the silent alarm, Murray displayed the butt of a weapon to the teller, who was six months pregnant at the time, and put his hand on the stock of the weapon -- a sawed-off shotgun. A jury convicted Murray of armed bank robbery. See Murray, 65 F.3d at 1164.

In the pre-sentence report (PSR), Murray's base offense level was set at twenty pursuant to the robbery guideline. See U.S. Sentencing Guidelines Manual § 2B3.1(a) (1993). The PSR also recommended a two-level enhancement under USSG § 2B3.1(b)(1) because property of a financial institution was taken, a five-level enhancement under USSG § 2B3.1(b)(2)(C) because Murray displayed a firearm during the robbery, a two-level enhancement under USSG§ 2B3.1(b)(2)(F) because Murray made an express threat of death during the robbery, and a two-level enhancement under USSG § 3C1.1 for obstruction of justice.

At the sentencing hearing, Murray's trial counsel objected to only two of the enhancements contained in the PSR. In particular, counsel argued that Murray neither made an express threat of death nor obstructed justice. The district court overruled the objections, and asked counsel whether the district court had addressed all of Murray's objections to the PSR. Counsel stated that the district court had done so. The district court adopted the PSR and established a total offense level of thirty-one. With a criminal history category of I, the applicable guideline range was 108 to 135 months.

The Government then moved for an upward departure on two grounds -- extreme psychological injury to the victim under USSG § 5K2.3, p.s., and dangerousness of the weapon used in the robbery under USSG § 5K2.6, p.s. The district court granted a six-level departure based on the dangerousness of the weapon. With regard to extreme psychological injury, the teller testified that she was terrified and feared for her life when she saw Murray's gun because he was agitated and nervous and had made it clear that if she did not give him the money quickly he would draw the gun. The teller also testified that she sought psychological counseling to deal with the trauma she suffered during the robbery and that she was depressed and could not work on the teller line for fear of being robbed. The teller stated that the stress from the robbery caused complications in her pregnancy.

3

She developed gestational diabetes, which she alleges increases her chances of developing diabetes later in life. The district court found that a two-level upward departure was warranted.

With the additional eight levels, Murray's total offense level was thirty-nine and his criminal history category was I, for a guideline range of 262 to 327 months. Because the statutory maximum was twenty-five years, the range decreased to 262 to 300 months. The district court sentenced Murray to 300 months imprisonment, ordered five years of supervised release, and imposed restitution in the amount of $3380.

On direct appeal, Murray raised several claims. [2] First, he challenged certain evidentiary rulings, which this Court upheld. See Murray, 65 F.3d at 1168-70. Next, Murray contended that "merely revealing his gun to a teller was not sufficient support for the [two-level] enhancement" under USSG § 2B3.1(b)(2)(F) for making an express threat of death. This Court disagreed. See id. at 1170. Finally, Murray challenged the extent of the court's six-level upward departure under USSG § 5K2.6, p.s., for the dangerousness of the weapon. This Court found that "[t]he district court's use by analogy of a guideline reflecting similar conduct -- possession of a shotgun -- supports the reasonableness of its decision." Id. at 1171. After noting that Murray did not challenge the five-level enhancement under USSG § 2B3.1(b)(2)(C) for brandishing, displaying, or possessing a firearm during the robbery, see id. at 1171 n.10, this Court affirmed Murray's conviction and sentence, see id. at 1172.

On January 27, 1997, Murray filed a § 2255 motion, challenging his 300-month sentence.[3] Murray contended that his trial counsel was

_____

[2] Murray was represented by trial counsel on direct appeal.
[3] Murray's § 2255 motion is not time-barred under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA), even though it was filed more than one year after Murray's conviction became final. Under Brown v. Angelone, 150 F.3d 370, 372 (4th Cir. 1998) (holding that the one-year limitations period does not apply retroactively to cases where the conviction became final before the AEDPA's effective date), Murray had until April 26, 1997, to file his § 2255 motion. Because he filed it in January 1997, it was timely filed.

4

ineffective on several grounds: (1) counsel failed to object at sentencing to the multiple enhancements under USSG § 2B3.1(b)(2)(C) and (F) on the ground that the enhancements were alternative and not cumulative; (2) counsel failed to challenge on appeal the district court's upward departures for the dangerousness of the weapon and extreme psychological injury;**4** and (3) counsel failed to investigate adequately the validity of the arrest warrant and indictment.**5**

In response to Murray's motion, the Government moved for summary judgment. (J.A. at 241.) With regard to Murray's first claim, the Government contended (1) that subdivision (F) relating to the express threat of death "is uniquely independent of the other subdivisions" because it contains no reference to a weapon; and (2) that enhancements under USSG § 2B3.1(b)(2)(C) and (F) were proper because Murray both displayed the shotgun and placed his hand on the weapon. Although noting the arguable claim to the contrary, the Government contended that Murray's counsel provided effective assistance in light of Murray's acquittal on four unarmed bank robbery charges and the district court's statements at sentencing that counsel ably represented Murray. "At worst," the Government argued, "Murray's trial counsel was a victim of an unclear sentencing guideline." (J.A. at 250.) Turning to Murray's second claim, the Government noted that counsel did in fact challenge on direct appeal the six-level upward departure for the dangerousness of the weapon.

The district court granted the Government's motion for summary judgment and denied Murray a Certificate of Appealability. Specifically, the district court concluded that "[a]s the United States argues in its memorandum, and the [c]ourt finds,[Murray] was provided

_____

**4** Murray has abandoned his claim that trial counsel was ineffective for failing to object to the district court's upward departure for extreme psychological injury by failing to raise it in his brief. See Canady v. Crestar Mortgage Corp., 109 F.3d 969, 973 (4th Cir. 1997) (holding that issues raised, but not briefed, are deemed waived on appeal).

**5** Murray has abandoned his third claim on appeal by failing to raise it in his brief. See Canady v. Crestar Mortgage Corp., 109 F.3d 969, 973 (4th Cir. 1997) (holding that issues raised, but not briefed, are deemed waived on appeal).

5

effective assistance of counsel with respect to each matter that he has raised." (J.A. at 260.) Murray noted a timely appeal.

II.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-part test for reviewing claims of ineffective assistance of counsel. See id. at 690. First, Murray must demonstrate that his trial counsel's performance fell below an objective standard of reasonableness. See id. at 690. This, however, is no simple task. A court's review of trial counsel's performance is "highly deferential." Id. at 689. Indeed, courts must afford a strong presumption that counsel's performance was within the wide range of professionally competent assistance. See id. If Murray is able to demonstrate that his trial counsel's performance was objectively unreasonable, he must then "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. As a result, Murray's trial counsel may be deemed ineffective only if his "conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686.

In Lockhart v. Fretwell, 506 U.S. 364 (1993), the Supreme Court clarified the meaning of prejudice under Strickland. See id. at 369-70. Although the Supreme Court in Strickland focused primarily on whether "the result of the proceeding would have been different," Strickland, 466 U.S. at 694, the Supreme Court in Lockhart clarified that "an analysis focusing solely on mere outcome determination . . . is defective," Lockhart, 506 U.S. at 369. Instead, a proper prejudice analysis must consider "whether the result of the proceeding was fundamentally unfair or unreliable." Id. As a result, a court may not "set aside a conviction or sentence solely because the outcome would have been different but for counsel's error." Id. at 369-70.

With these principles in mind, we review Murray's two claims of ineffective assistance of counsel.

6

A.

Murray first claims that his trial counsel was ineffective for failing to object at sentencing to multiple enhancements under USSG § 2B3.1(b)(2)(C) and (F).[6] Sentencing is a critical stage of the trial proceedings, thereby entitling a defendant to effective assistance of counsel. See United States v. Breckenridge, 93 F.3d 132, 135 (4th Cir. 1996). Counsel's failure "to object to an improper application of the sentencing guidelines may amount to ineffective assistance of counsel." Id. at 136.

In the robbery guideline, there are six specific offense characteristics that may be applied to enhance the base offense level. At issue here is subsection (b)(2):

(2) (A) If a firearm was discharged, increase by 7 levels; (B) if a firearm was otherwise used, increase by 6 levels; (C) if a firearm was brandished, displayed, or possessed, increase by 5 levels; (D) if a dangerous weapon was otherwise used, increase by 4 levels; (E)

_____

[6] Barring extraordinary circumstances, an error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding. Section 2255 provides relief for cases in which "the sentence was in excess of the maximum authorized by law." Thus, while § 2255 applies to violations of statutes establishing maximum sentences, it does not apply to errors in the application of the Sentencing Guidelines. See, e.g., Auman v. United States, 67 F.3d 157, 161 (8th Cir. 1995) (holding that absent a "miscarriage of justice," ordinary questions of Guidelines interpretation are not cognizable on collateral review); Scott v. United States, 997 F.2d 340, 341 (7th Cir. 1993) ("A claim that the judge misapplied the Sentencing Guidelines does not challenge the jurisdiction of the court or assert that the judge exceeded the statutory maximum."); Knight v. United States, 37 F.3d 769, 773 (1st Cir. 1994) (misapplication of Sentencing Guidelines not proper claim under § 2255); United States v. Segler, 37 F.3d 1131, 1134 (5th Cir. 1994) ("A district court's technical application of the Guidelines does not give rise to a constitutional issue cognizable under § 2255."). Here, however, Murray is able to circumvent the general rule by styling his sentencing claim as an ineffective assistance of counsel claim. See Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995).

7

if a dangerous weapon was brandished, displayed, or possessed, increase by 3 levels; <u>or</u> (F) if an express threat of death was made, increase by 2 levels.

USSG § 2B3.1(b)(2) (emphasis added). In the notes to the general application principles, the guidelines provide that"[w]ithin each specific offense characteristic subsection, . . . the offense level adjustments are <u>alternative</u>; only the <u>one</u> that best describes the conduct is to be used." USSG § 1B1.1, comment. (n.4) (emphases added).

As an initial matter, we conclude that the base offense level for robbery under the Sentencing Guidelines may <u>not</u> be increased for both brandishing a firearm and making an express threat of death. First, USSG § 2B3.1(b)(2) specifically lists the enhancements using the disjunctive "or." Second, as noted above, Application Note 4 to USSG § 1B1.1 states that enhancements that are listed within the same specific offense characteristic may not be applied cumulatively. Finally, every Circuit to consider the issue has held that only one enhancement from USSG § 2B3.1(b)(2) may be applied. <u>See United States v. Triplett</u>, 104 F.3d 1074, 1082 (8th Cir.) (finding multiple enhancements improper because § 2B3.1(b)(2) was written in disjunctive and each subdivision encompassed conduct in subsequent subdivisions), <u>cert. denied</u>, 117 S. Ct. 1837 (1997); <u>United States v. Omar</u>, 16 F.3d 1168, 1170-71 (11th Cir.) (holding that§ 2B3.1(b)(2) "offers a set of alternative increases"), <u>modified on other grounds</u>, 24 F.3d 1356, 1357 (11th Cir. 1994); <u>United States v. Farrier</u>, 948 F.2d 1125, 1127 (9th Cir. 1991) (same).

Whether Murray's trial counsel's failure to object to the improper application of the sentencing guidelines constituted ineffective assistance of counsel is a mixed question of law and fact that this Court reviews de novo. <u>See Griffin v. Warden</u>, 970 F.2d 1355, 1357 (4th Cir. 1992). For the reasons that follow, we conclude that Murray's trial counsel was objectively unreasonable for failing to object to the cumulative enhancement under USSG § 2B3.1(b)(2), and that Murray was prejudiced thereby.

First, the plain language of § 2B3.1(b)(2) is written in the disjunctive. It is well settled that the use of the disjunctive "or" precludes the application of more than one of the available alternatives. <u>See, e.g.,</u>

8

<u>Webster's Ninth New Collegiate Dictionary</u> 829 (1990) (defining "or" as "a function word to indicate an alternative"). For example, in <u>United States v. Hawkins</u>, 76 F.3d 545, 550 (4th Cir. 1996), this Court held that the disjunctive language of 18 U.S.C.A.§ 401, which allows a federal court to punish criminal contempt "by fine or imprisonment," precludes a court from imposing both imprisonment and a fine. Thus, based on the plain language alone, Murray's trial counsel should have concluded that only one subsection from USSG § 2B3.1(b)(2) could be used to enhance Murray's base offense level.**7**

Second, even if the disjunctive language of § 2B3.1(b)(2) was not sufficiently plain, the Sentencing Guidelines set forth a general application principle that permits courts to apply only one enhancement within a specific offense characteristic. <u>See</u> USSG § 1B1.1, comment. (n.4). It is well established that the "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." <u>Stinson v. United States</u>, 508 U.S. 36, 38 (1993). In <u>United States v. Curtis</u>, 934 F.2d 553, 556 (4th Cir. 1991), this Court specifically held that Application Note 4 to § 1B1.1 is authoritative. As the Third Circuit noted, "familiarity with the structure and basic content of the Guidelines . . . has become a necessity for counsel who seek to give effective representation." <u>United States v. Day</u>, 969 F.2d 39, 43 (3d Cir. 1992); <u>see also</u> <u>United States v. Gaviria</u>, 116 F.3d 1498, 1512 (D.C. Cir. 1997), <u>cert. denied</u>, 118 S. Ct. 865 (1998).

_____

**7** We acknowledge that, while subdivisions (A)-(E) are logical subsets of one another, <u>i.e.</u>, the conduct under subdivision (A), discharging a weapon, encompasses the conduct described in subdivision (C), brandishing a weapon, the conduct described in subdivision (F) lacks any reference to a weapon. As such, it would seem, at least at first blush, that subdivision (F) is independent of the other subdivisions and, therefore, could be applied in combination with any one of those subdivisions. In fact, despite Murray's contentions to the contrary, making an express threat of death is not encompassed by subdivision (C). (For example, under USSG § 2B3.2, a defendant may receive an enhancement both for an express threat of death and for the involvement of a weapon.) As such, the error is not as "obvious" as Murray would argue. In the end, however, we believe that the plain language of the Sentencing Guidelines renders counsel's failure to object unreasonable.

9

Finally, in addition to the plain language of § 2B3.1(b)(2) and the official commentary, case law available at the time of Murray's sentencing would have supported an objection. In Farrier, the Ninth Circuit held that a defendant's sentence under § 2B3.1 could not be enhanced both for the use of a firearm and for making an express threat of death. Notably, even the Government in Farrier conceded that the error was obvious. 948 F.2d at 1127. In sum, we believe that counsel's failure to object was unreasonable.

Having established that his trial counsel was objectively unreasonable, we conclude that Murray can also establish prejudice. Murray's total offense level was thirty-nine and his criminal history category was I, for a guideline range of 262 to 327 months. The range could not exceed 300 months, however, based on the statutory maximum of twenty-five years. Because the multiple enhancements under § 2B3.1(b)(2)(C) and (F) were improper, Murray's total offense level was higher than required under the Sentencing Guidelines.

In determining what effect applying either USSG§ 2B3.1(a)(2)(C) or (F) would have on Murray's total offense level, **8** we note that Murray would still have a base offense level of twenty under USSG § 2B3.1(a), a two-level enhancement under USSG§ 2B3.1(b)(1), a two-level enhancement under USSG § 3C1.1, and an eight-level upward departure under USSG §§ 5K2.3, p.s., and 5K2.6, p.s. These numbers remain unchanged because there were no challenges by Murray at the sentencing hearing or because his challenges were overruled by the district court and upheld by this Court on direct appeal. If the five-level enhancement under USSG § 2B3.1(b)(2)(C) best describes Murray's conduct during the robbery, the total offense level of thirty-seven coupled with a criminal history category of I yields a range of 210 to 262 months; if, however, the two-level enhancement under USSG § 2B3.1(b)(2)(F) best describes Murray's conduct, the total offense level of thirty-four coupled with a criminal history category of I yields a range of 151 to 188 months. Therefore, the 300-month sentence Murray received as a result of the multiple enhancements exceeds the highest possible sentence under offense level thirty-four by 112 months and under offense level thirty-seven by

_____

**8** Section 2B3.1(b)(2) of the guidelines currently in effect is identical to the 1993 guidelines under which Murray originally was sentenced.

10

thirty-eight months. As a result, but for counsel's error, the outcome would have been different. See Strickland, 466 U.S. at 694. Moreover, we conclude that the potential change in sentence was sufficiently significant to render the proceeding unfair. See Lockhart, 506 U.S. at 369; see also Martin v. United States, 109 F.3d 1177, 1178 (7th Cir. 1996) (holding that the potential change of sentence must be a significant amount in order to satisfy the prejudice prong); Durrive v. United States, 4 F.3d 548, 551 (7th Cir. 1993) (same).

Because Murray established that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced thereby, we vacate Murray's sentence and remand for further proceedings in the district court. Cf. Breckenridge , 93 F.3d at 140.[9] In resentencing Murray, the district court should determine whether brandishing, displaying, or possessing a firearm under USSG § 2B3.1(b)(2)(C) or making an express threat of death under USSG § 2B3.1(b)(2)(F) best describes Murray's conduct during the robbery. See USSG § 1B1.1, comment. (n.4). Once the district court determines which subdivision should apply, it should adjust the offense level and resulting guideline range accordingly and sentence Murray within that range.

B.

In addition to enhancing Murray's sentence under§ 2B3.1(b)(2) for the display of a firearm, the district court departed upward under

_____

[9] In Breckenridge, this Court found that it did not need to vacate defendant's sentence at the time it disposed of the appeal. Whether resentencing was necessary depended on the factual findings to be made by the district court regarding whether offenses were related for purposes of sentencing as a career offender. If the district court found that the offenses were not related, then counsel's failure to raise the issue resulted in no prejudice and no further proceedings were necessary. But if the district court found that the offenses were related, counsel's failure to raise the issue constituted ineffective assistance of counsel requiring defendant to be resentenced. See Breckenridge, 93 F.3d at 140. Here, unlike Breckenridge, regardless of which subdivision-- § 2B3.1(b)(2)(C) or (F) -- the district court ultimately determines should apply, Murray's guideline range and resulting sentence necessarily will be lowered.

11

§ 5K2.6 for the use of a dangerous weapon. In light of the enhancement, Murray contends that the departure constituted double counting, i.e., the factor warranting the upward departure was already taken into account by the underlying offense guideline.

As the Government correctly noted below, this Court addressed the propriety of this upward departure on direct appeal and found that the departure was warranted. See Murray, 65 F.3d at 1170-72. Murray's claim, therefore, must fail because he cannot show that his trial counsel's performance was objectively unreasonable or that he was prejudiced. See Strickland, 466 U.S. at 688, 694. Accordingly, we dismiss this portion of the appeal.

III.

In sum, we conclude that Murray has made a substantial showing of the denial of a constitutional right on the first of his two ineffective assistance of counsel claims. Accordingly, we grant Murray's request for a Certificate of Appealability as to his first claim, see 28 U.S.C.A. § 2253(c)(2), vacate that portion of the district court's order, and remand for resentencing. We deny a Certificate of Appealability and dismiss the appeal as to Murray's second claim.

VACATED IN PART, DISMISSED IN PART, AND REMANDED

12