UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

|  |  |
|---|---|
| OUT OF CHAOS, LIMITED, *Plaintiff-Appellant,* <br><br> v. <br><br> AON CORPORATION; AON/ALBERT G. RUBEN INSURANCE SERVICES, *Defendants-Appellees,* <br><br> and <br><br> THE CHUBB CORPORATION; THE FEDERAL INSURANCE COMPANY; VIGILANT INSURANCE COMPANY; PACIFIC INDEMNITY COMPANY; THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, *Defendants.* | No. 00-2592 |

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-00-592-A)

Argued: June 6, 2001

Decided: August 3, 2001

Before WILKINSON, Chief Judge, TRAXLER, Circuit Judge,
and Andre M. DAVIS, United States District Judge for the
District of Maryland, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

## COUNSEL

**ARGUED:** Edward Brian MacMahon, Jr., LAW OFFICE OF EDWARD B. MACMAHON, JR., Middleburg, Virginia, for Appellant. Davis D. Carr, AON CORPORATION, Chicago, Illinois, for Appellees. **ON BRIEF:** Daniel D. Kasten, AON CORPORATION, Chicago, Illinois; Griffith Lowell Green, SIDLEY & AUSTIN, Washington, D.C., for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Appellant, Out of Chaos, Ltd ("OCL"), a "start up" film production company, filed a multi-count lawsuit against Appellees Aon Corporation and Aon/Albert G. Ruben Insurance Services (hereinafter, jointly, "Aon/AGR"), an insurance agency, and other entities not parties to this appeal, in the United States District Court for the Eastern District of Virginia, seeking substantial damages for losses OCL incurred in connection with an aborted film production. The district court granted judgment on the pleadings in favor of Appellees on OCL's claims for fraud and conversion. Subsequently, at the conclusion of discovery, the district court granted summary judgment in favor of Appellees on OCL's negligence claims.[1] We discern no error in the district court's rulings; accordingly, we affirm.

---

[1] The district court also granted summary judgment to Aon/AGR on OCL's breach of contract claim, but OCL has waived its right to appeal the unfavorable judgment on the breach of contract claim by failing to address it in its appellate briefs. *Canady v. Crestar Mortgage Corp.*, 109 F.3d 969, 973 (4th Cir. 1997).

I

Brothers James and Randall Starrett formed OCL and entered into a one million dollar contract with Discovery Communications, Inc. ("Discovery"), to film "Tournament of Shadows," a docudrama about the British explorer Sir Francis Younghusband's expedition into the mountains of central Asia.

On Discovery's recommendation, the Starretts contacted Kristi Jones, a broker with Aon/AGR, to secure insurance for their undertaking, as the contract required. Jones advised the Starretts that OCL would be eligible to obtain insurance under the Discovery blanket policy with Chubb. Jones faxed to OCL a document which stated as follows: "The following brief description of motion picture and television production insurance is general in nature and is not meant to be a complete explanation of the policy terms. Specimen policies are available through our firm." (J.A. 336.) The Starretts never requested specimen policies prior to paying the necessary premiums. Randy Starrett testified on deposition that he understood that the policies "cover[ed] all risk [sic] except those risks which are excepted." (J.A. 339.)

In fact, Aon/AGR procured coverage for that part of OCL's production of "Tournament of Shadows" that would not be based in Pakistan under a package of insurance provided by Federal Insurance Company, Vigilant Insurance Company and Pacific Indemnity Company, three companies affiliated with Chubb Corporation (hereinafter, collectively, "Chubb"). Aon/AGR obtained on OCL's behalf a separate foreign policy from the Insurance Company for the State of Pennsylvania ("ICSOP") to provide workers' compensation, automobile and commercial general liability insurance for filming in Pakistan.

In her communications with the Starretts, Jones did not explain every policy exclusion. Specifically, she did not explain that there was an employee infidelity exception in the Chubb coverage. Significantly, neither of the Starretts advised Jones that OCL faced any special risk of misconduct by employees or representatives. Moreover, James Starrett specifically stated on deposition that he would not have attempted to purchase different or additional insurance had he known beforehand about the employee infidelity exclusion.

Aon/AGR faxed OCL confirmation that it had bound OCL's insurance effective in June 1997. The fax transmission included a declarations page stating that all standard exclusions applied.

After it had obtained the insurance, OCL hired Pavel Lounguine to develop the screenplay and direct the film; shortly thereafter, filming began in Pakistan. Relations between Lounguine and the Starretts soon soured. By the time principal photography in Pakistan had been completed in December 1997, the project was seriously over budget. Lounguine and his editor went to Paris to process and assemble the film. In February 1998, after he had completed this work, Lounguine absconded with the computer disks containing the film assembly and announced he would no longer work for OCL.

In March 1998, Lounguine filed a lawsuit against OCL in Paris ("the French lawsuit"), and the bailiff of the French court seized the film. Discovery advised OCL that it must settle the French lawsuit and cease all production activity. By April 1998, OCL's counsel had negotiated a settlement of the French lawsuit "upon terms dictated by" Discovery. Discovery obtained possession of the film, which it retains. Pursuant to the French settlement, OCL paid $7,000 unconditionally, and it deposited an additional $45,875 in escrow. When the French lawsuit was not dismissed as required by the settlement, the French court dismissed the case. Virtually all of the escrowed settlement funds were returned to OCL. Discovery advised OCL that before OCL could regain possession of the film and complete the production, it had to pay the extra expenses the project had incurred, totaling $975,510. (J.A. 125.) OCL has not paid these extra costs and has never completed the film.

A portion of the damages OCL sought in this action allegedly resulted directly from the French lawsuit and its surrounding circumstances, while other claimed damages resulted indirectly. In particular, OCL alleged that it incurred $63,057 in defense costs in connection with the French lawsuit. According to OCL, its other damages claims against Aon/AGR are rooted in (1) the "undisclosed" employee infidelity exclusion in the Chubb coverage and (2) the confusion and delay (which OCL asserts resulted in the failure of the entire production) attending Aon/AGR's awkward efforts to process and deliver to the appropriate insurers OCL's claims for indemnity

under the policies that Aon/AGR had obtained on OCL's behalf from the various insurers.[2] In short, OCL has sought to assign as a cause of the collapse of the film project Aon/AGR's acts and omissions.

Ultimately, OCL filed this suit in April 2000. OCL joined as defendants all of the insurers with whom Aon/AGR had placed insurance, as well as Aon/AGR. Eventually, all defendants except Aon/AGR were dismissed from the lawsuit. Specifically, ICSOP settled with OCL and paid it $113,097.32. According to the uncontradicted affidavit of ICSOP's vice-president, even if ISCOP had received timely notice of the French lawsuit, ISCOP would have merely provided OCL a defense through a reasonable period (i.e., September 1998) in order to effect a reasonable settlement, which OCL had indeed achieved on its own, albeit under pressure from Discovery. Chubb also settled the claims asserted by OCL's in this action, but the terms of that settlement are not in the record.[3]

II

As relevant to this appeal, in its amended complaint OCL asserted

---

[2]The record is not entirely clear as to when OCL notified Aon/AGR about the French lawsuit and its production delay losses, and as to when Aon/AGR notified the various insurance companies providing coverage to OCL. OCL asserts that it notified Jones at Aon/AGR in late March 1998 of the French lawsuit. OCL requested that Aon/AGR notify Vigilant Insurance Company, Pacific Indemnity Company and "any other insurance company that affords [OCL] coverage for" the lawsuit and the costs of the delay. (J.A. 68.) In November 1998, Aon/AGR forwarded notice of OCL's claims to Chubb, but mistakenly, not to ICSOP. From December 1998 to July 1999, a Chubb employee in New Jersey repeatedly told OCL's attorney that Chubb's property policy did not cover OCL's claims. Another Chubb employee in Los Angeles erroneously informed OCL in September 1999 that a workers' compensation policy was the only policy Chubb had sold to OCL. Chubb later acknowledged that it also sold the other policies to OCL, but asserted that OCL's claims were not covered because of the employee infidelity exclusion.

[3]OCL also brought an action against Lounguine in the United States District Court for the Eastern District of Virginia and has obtained a default judgment in the amount of $3.1 million.

three claims against Aon/AGR: (1) fraud; (2) conversion; and negligence.

The district court entered judgment on the pleadings in respect to the claims for fraud and conversion. The court noted that under *Richmond Metropolitan Authority v. McDevitt, Street, Bovis, Inc.*, 507 S.E.2d 344 (Va. 1998), a claim for an alleged misrepresentation as to a duty or obligation that was specifically required by a contract sounds in contract. The district court observed that fraud in the inducement would be an exception to the rule in that case, and repeatedly indicated that if OCL could, within "the strictures of Rule 11," allege that Aon/AGR "told you something, never intending to perform it," then OCL could further amend its complaint. (J.A. 245, 262-63, 269.) OCL never attempted further to amend its complaint.

The parties proceeded with discovery as to the contract and negligence claims and Aon/AGR filed a motion for summary judgment. During oral argument on Aon/AGR's motion, counsel for OCL conceded that it was "clear that [Aon/AGR] bought insurance for my client that's been produced in discovery and it is there," and that the issue OCL "tried to raise is whether it was the appropriate insurance," which was "more of a negligence question than a contract claim." (J.A. 396.)

Accordingly, the district court granted summary judgment for Aon/AGR on the breach of contract claim because it was clear Aon/AGR had procured insurance. The surviving claims concerned the adequacy of that insurance and the reasonableness of Aon/AGR's handling of the claim processing efforts it undertook. The district court granted summary judgment on the negligence claims, as well, however, ruling that the undisputed facts established that the insurance policies that OCL obtained were essentially the standard sort of policies ordinarily obtained by, or for, Discovery, if not also the entire film industry, and that OCL had communicated no unique or special issues which could have placed Aon/AGR on notice that it had a duty to obtain a policy that would provide coverage for losses occasioned by employee infidelity. Furthermore, the district court concluded that OCL had failed to establish that any of the damages that it suffered were proximately caused by a breach of duty chargeable to Aon/AGR in its handling of the claims processing functions.

III

We review *de novo* a district court's grant of judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *Pacific Ins. Co. v. American Nat'l Fire Ins.*, 148 F.3d 396, 405 (4th Cir. 1998), *cert. denied*, 525 U.S. 1104 (1999). In so doing, we apply the standard for a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). We review the grant of summary judgment *de novo, Chisolm v. UHP Projects, Inc.*, 205 F.3d 731, 734 (4th Cir. 2000), applying the standards of Fed. R.Civ. P. 56.

IV

OCL's amended complaint alleged that Aon/AGR committed fraud and conversion when it did not obtain the insurance it agreed to obtain and when it utilized OCL's insurance premiums for its own purposes. Under Virginia law, "a party can, in certain circumstances, show both a breach of contract and a tortious breach of duty." *Richmond Metropolitan Authority v. McDevitt, Street, Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998) (internal quotations omitted).[4] The Virginia Supreme Court further held that "the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." *Id*. (internal quotations omitted).

A claim for "fraud in the inducement" is not foreclosed by the rule of *McDevitt, Street, Bovis, Inc.*, 507 S.E.2d at 348 (*citing Flip Mortgage Corp. v. McElhone*, 841 F.2d 531 (4th Cir. 1988)). To make out such a claim, the plaintiff must allege facts that demonstrate the defendant's intent (at the time the promises are made) never to abide by the terms of the contract. *Id*. When, as in the instant case, the allegations of fraud or conversion "are nothing more than allegation[s] of negligent performance of contractual duties," such alleged breaches of duty are not actionable in tort. *Id*. at 347.

Essentially, OCL alleged that it had a contract with Aon/AGR that OCL would pay premiums and Aon/AGR would secure insurance for "Tournament of Shadows." OCL alleged that Aon/AGR did not

---

[4]The parties agreed that the substantive law of Virginia is controlling.

secure insurance as the contract required, and made fraudulent state-ments and issued fraudulent documents stating that it had. In addition, OCL alleged that Aon/AGR converted OCL's premiums for its own use. Each of these alleged wrongful acts arise from Aon/AGR's con-tractual duty to OCL, i.e., to use OCL's payments to buy insurance. Aon/AGR had no separate common law duty to do these things for OCL; rather, such duties inhere solely in Aon/AGR's contractual undertakings.

Plainly, as the district court correctly concluded, OCL did not plead that it had been fraudulently induced to enter into the (oral) contract with Aon/AGR for the procurement of insurance.[5] Nor is there a scin-tilla of evidence that Aon/AGR misapplied funds intended for use as premium payments. Thus, the district court properly entered judgment on the pleadings as to the claims for fraud and conversion.[6]

V

We are likewise satisfied that the district court did not err in grant-ing summary judgment to Aon/AGR on OCL's negligence claims. OCL theorized that Aon/AGR negligently "fail[ed] to procure [ade-quate] insurance" and negligently "fail[ed] to professionally process" OCL's claims for coverage. Even if Aon/AGR had an independent

---

[5]OCL's fraud allegations concern statements or verbal acts Aon/AGR made *after* the contract had been formed. For example, OCL alleged: Aon/AGR "repeatedly stated that it had procured the Chubb insurance package for OCL"; "Aon and Chubb delivered to OCL various insurance certificates and declaration sheets indicating that OCL was insured. . . ." (J.A. 141-43.)

[6]OCL purports to challenge the district court's entry of judgment on the pleadings by making allegations that are not set forth in its amended complaint. For instance, OCL now argues that Aon/AGR's fraud was to induce OCL to enter a contract for insurance when Aon/AGR knew it planned to buy the insurance from a company, Chubb, which would lose its policy and fail to pay its claims. It is patent, however, that *post facto* arguments about matters not in the pleadings and raised for the first time on appeal will not provide an appellate court grounds to reverse a district court's grant of judgment on the pleadings. *See Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 453 n.5 (7th Cir. 1998).

tort duty to comply with a relevant standard of care which required, specifically, that it disclose and explain to the Starretts the employee infidelity exclusion, or to expeditiously process OCL's claims, and even if we assume that Aon/AGR breached these duties, there is no genuine dispute of material fact whether OCL suffered any damages proximately caused by these ostensible breaches. It did not.

A

The district court correctly granted summary judgment to Aon/AGR on the adequacy of insurance issue because the record stands undisputed that even if James Starrett had obtained actual possession of the policy documents (as he was invited to do) and discussed with Jones, the Aon/AGR broker, the employee infidelity clause in the Chubb coverage, he would not have sought substitute coverage or otherwise done anything differently. Thus, the fact that the Chubb coverage obtained by Aon/AGR contained an employee infidelity exclusion was not a proximate cause of injury to OCL.

B

Similarly unavailing is OCL's contention that Aon/AGR's breach of its duty to process OCL's claims in a professionally reasonable manner and to provide timely notice of loss to the respective insurance companies proximately caused injury to OCL. Even if Aon/AGR had an independent duty to provide timely notice to the insurers of OCL's claims, the breach of which would give rise to a claim sounding in tort, OCL failed to generate a genuine dispute of material fact as to whether a breach of such duty caused it injury or damage.

It is undisputed that ICSOP's policy covered third party claims for personal injury or property damage, and that the French lawsuit included a claim for personal injury to Lounguine. Thus, there was a potentiality of coverage. ICSOP, though belatedly notified of the French litigation, has settled with OCL, paying recompense for the direct damages caused by the French lawsuit. (J.A. 378.) Without contradiction, ICSOP's vice-president has attested that had ICSOP known about the French lawsuit while it was pending,[7] it would have

---

[7] OCL settled the French lawsuit on March 30, 1998, only six days after OCL allegedly first notified Aon/AGR of its existence.

covered OCL's defense costs only for the purpose of securing a prompt settlement of that action. (J.A. 379.) OCL alleges it was forced to settle the French lawsuit because no insurance company came forward to defend it; however, the most that OCL would have obtained from ICSOP would have been assistance in settling the case. More to the point, it was Discovery that insisted that OCL cease film production and settle the French case immediately. Pursuant to the French settlement, OCL paid $7,000 unconditionally and deposited an additional $45,875 in escrow. When Lounguine failed to dismiss the French lawsuit in accordance with the terms of the settlement, virtually all of the escrowed funds were returned to OCL. As a matter of law, therefore, as the district court correctly concluded, OCL suffered no cognizable damage from the delay in ICSOP's receipt of notice of the claim.

OCL alleges that Discovery canceled production of "Tournament of Shadows" because of the French lawsuit, and that Aon/AGR's failure to deliver timely notice to ICSOP of the French lawsuit was therefore the proximate cause of the damages flowing from the production cancellation. These bald allegations are unsupported by any evidence in the summary judgment record and therefore lack merit. First, as explained above, even if Aon/AGR had notified ICSOP sooner, this possibility would not have altered the consequences to OCL of the seizure of the film and the institution of the French lawsuit. ICSOP, like Discovery, would have insisted on prompt settlement, which is precisely what occurred.

Second, OCL has failed to generate a factual dispute as to whether the film production was actually canceled as a result of the French lawsuit. The undisputed evidence in the record shows that, in accordance with the French settlement, the film was returned to Discovery, which retains possession of it. Discovery informed OCL that it would not allow it to complete the film until OCL paid Discovery $975,510 in cost overruns. Plainly, it is because OCL has never paid this sum to Discovery that the production was canceled.

OCL insists that the $975,510 should have been paid by Chubb or ICSOP. But there is no factual support in the record for OCL's assertion that the policies with these companies did or would have required any such payments. Accordingly, the issue of whether Aon/AGR

unreasonably failed to provide timely notice to the insurers of OCL's losses resulting from the cancellation of the production is immaterial to the issue that is dispositive of OCL's damages claims based on its negligence theories.

In sum, the district court correctly concluded that OCL failed to produce evidence that Aon/AGR's acts or omissions were a proximate cause of OCL's damages.

*AFFIRMED*