**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**William F. BRECKENRIDGE,**
**Defendant–Appellant.**

**No. 94–6516.**

United States Court of Appeals,
Fourth Circuit.

Argued April 4, 1996.

Decided Aug. 20, 1996.

**ARGUED:** William Michael Merone, Kenyon & Kenyon, Washington, D.C., for Appellant. Jean Barrett Hudson, Assistant United States Attorney, Charlottesville, Virginia, for Appellee. **ON BRIEF:** Richard J. Bonnie, Kirk H. Hays, Third Year Law Student, Post–Conviction Assistance Project, University of Virginia School of Law, Charlottesville, Virginia, for Appellant. Robert P. Crouch, Jr., United States Attorney, Charlottesville, Virginia, for Appellee.

Before MOTZ, Circuit Judge, TRAXLER, United States District Judge for the District of South Carolina, sitting by designation, and PAYNE, United States District Judge for the Eastern District of Virginia, sitting by designation.

Remanded by published opinion. Judge MOTZ wrote the opinion, in which Judge TRAXLER and Judge PAYNE joined.

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

William F. Breckenridge appeals from the district court's denial of his motion, made pursuant to 28 U.S.C. § 2255 (1988), to vacate, set aside, or correct his sentence. He asserts that his trial counsel's failure to point out that his prior offenses were related and thus not a basis for sentencing him as a career criminal constituted ineffective assistance of counsel. We remand for further proceedings.

I.

■ In 1991, Breckenridge was convicted of possession with intent to distribute .12 grams of crack cocaine. He was sentenced to 220 months imprisonment as a career offender.[1] At the core of Breckenridge's § 2255 claim is the question of whether his classification as a career criminal was proper. Without the career criminal classification, Breckenridge's total offense level would have been 12 and the applicable range for his sentence would have been 30 to 37 months imprisonment (2½ to slightly over 3 years), rather than the 220 months (18½ years) he received as a career criminal.

In determining that Breckenridge was a career offender, the sentencing court relied on a pre-sentence investigation report, which indicated that Breckenridge's criminal history included six prior felonies. Each felony was for breaking and entering and grand larceny of a private residence. The residences were located in close geographic proximity to each other and the offenses all occurred during the same one month period in 1987. Five burglaries occurred in the City of Charlottesville and one in adjoining Albe-

---

**1.** Breckenridge appealed his conviction to this court; we affirmed. *United States v. Breckenridge,* Nos. 91–5341, 91–5242, 972 F.2d 342 (4th Cir. Aug. 14, 1992) (unpublished). Breckenridge's failure to raise the present claim at his sentencing hearing or on direct appeal would ordinarily bar collateral review unless he was able to show "cause and prejudice." *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). However, it is well-settled that ineffective assistance of counsel constitutes cause for failure to raise an issue prior to § 2255 review. *See, e.g., Auman v. United States,* 67 F.3d 157, 162 (8th Cir.1995); *United States v. Cook,* 45 F.3d 388, 392 (10th Cir.1995); *United States v. De la Fuente,* 8 F.3d 1333, 1337 (9th Cir.1993). *Cf. Smith v. Dixon,* 14 F.3d 956, 973 (4th Cir.) (in a § 2254 action, "[a]n attorney's effectiveness may constitute cause for excusing a procedural default when a petitioner has a constitutional right to effective assistance of counsel and when that assistance is constitutionally ineffective"), *cert. denied,* —— U.S. ——, 115 S.Ct. 129, 130 L.Ed.2d 72 (1994).

marle County, on the street bordering the two jurisdictions.[2] Similar items—video cassette recorders, jewelry, and guns—were stolen in each case.

The Charlottesville police investigated the first of these cases. When items from one of the robberies were traced to Breckenridge, the police targeted Breckenridge for a sting operation in which an informant attempted to purchase stolen items from him. Each transaction between the informant and Breckenridge was tape recorded by the informant. The transcript of the tapes reveals that the informant commissioned Breckenridge to obtain particular items—video cassette recorders and televisions—the next time he "went out." The sting operation was successful; the police were able to connect items sold to the informant by Breckenridge to all six burglaries. Breckenridge was then arrested and charged with five counts of breaking and entering and grand larceny in Charlottesville. A jury convicted Breckenridge of these five offenses and the Circuit Court of the City of Charlottesville sentenced him to five 18 month sentences to run concurrently. While Breckenridge was incarcerated and awaiting sentencing on the Charlottesville charges, the Charlottesville police notified the Albemarle County police that in the sting operation they had recovered items stolen by Breckenridge from an Albemarle County residence. Accordingly, Breckenridge was charged with, and pled guilty to, breaking and entering and grand larceny in the Circuit Court of Albemarle County and was sentenced to a six month suspended sentence for that crime.

In the pre-sentence investigation report compiled in connection with the sentence at issue here—the sentence for possession with intent to distribute .12 grams of cocaine—the probation officer recommended that the six breaking and entering offenses *not* be treated as "related" to each other and that Breckenridge receive an enhanced sentence as a career offender. *See* United States Sentencing Commission, *Guidelines Manual*,

§ 4B1.1 (Nov. 1995).[3] Although Breckenridge's trial attorney made various arguments as to why the suggested sentence was unfair or unconstitutional, he offered *no* argument to the court that the six breaking and entering offenses were "related" to each other and thus should not be counted as six separate offenses. Indeed, it was only after the district court ascertained that there were no "legal issues in dispute in the presentence report," that it sentenced Breckenridge as a career criminal.

In his *pro se* § 2255 motion, Breckenridge asserted that because all six breaking and entering offenses were "related" to each other, he should not have received an enhanced sentence as a career offender and that his trial counsel was ineffective for failing to raise this "relatedness" claim. The district court found that: "the six offenses are best described as part of a similar course of conduct rather than as part of a single common scheme or plan." Without ruling on Breckenridge's claim that the five Charlottesville offenses were related to each other, the court concluded that the "Albemarle County conviction was correctly counted as a separate offense" for purposes of determining Breckenridge's status as a career criminal. For this reason, the court held that Breckenridge failed to demonstrate that his counsel "was constitutionally ineffective."

## II.

■ Breckenridge contends that he was deprived of his Sixth Amendment right to effective assistance of counsel during the sentencing phase of his trial. We have previously noted that sentencing is a critical stage of trial at which a defendant is entitled to effective assistance of counsel, and a sentence imposed without effective assistance must be vacated and reimposed to permit facts in mitigation of punishment to be fully and freely developed. *United States v. Iaquinta*, 719 F.2d 83, 85–86 n. 5 (4th Cir.1983); *United States v. Burkley*, 511 F.2d 47, 51 (4th Cir.

---

**2.** The Albemarle County residence was actually closer to several of the Charlottesville houses than they were to each other.

**3.** Although the November 1990 Guidelines were in effect when Breckenridge was sentenced, we cite to the November 1995 Guidelines throughout this opinion because the intervening amendments have no bearing on our inquiry.

1975). The failure of counsel to object to an improper application of the sentencing guidelines may amount to ineffective assistance of counsel. *See, e.g., United States v. Kissick,* 69 F.3d 1048, 1056 (10th Cir.1995); *Auman v. United States,* 67 F.3d 157, 161 (8th Cir. 1995); *United States v. Acklen,* 47 F.3d 739, 743 (5th Cir.1995); *United States v. Headley,* 923 F.2d 1079, 1083–84 (3d Cir.1991); *Smith v. United States,* 871 F.Supp. 251, 255 (E.D.Va.1994). *Cf. Prichard v. Lockhart,* 990 F.2d 352, 354 (8th Cir.1993) (failure to object to improper use of prior offense under similar state law provisions).

■ Of course, to prove that ineffective assistance of counsel violates the Sixth Amendment, a petitioner must satisfy a two-pronged test. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Bell v. Evatt,* 72 F.3d 421, 427 (4th Cir.1995), *cert. denied sub nom. Bell v. Moore,* — U.S. —, 116 S.Ct. 2533, 135 L.Ed.2d 1056 (1996). A petitioner must show that "(1) his counsel's performance fell below an objective standard of reasonableness in light of the prevailing professional norms, and (2) 'there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Bell,* 72 F.3d at 427 (citing *Strickland,* 466 U.S. at 688, 694, 104 S.Ct. at 2064–65, 2068).

Breckenridge maintains that his counsel's failure to make any argument whatsoever that his prior offenses were related and that he was therefore not qualified for career offender classification was both constitutionally deficient and prejudicial. With regard to prejudice, Breckenridge notes that he was prejudiced by his attorney's error because his sentence would have been reduced by approximately 15 years (or would have been approximately one-sixth the sentence he did receive) if his prior offenses had been considered related. In response, the government does not claim that the defense counsel's failure to make the relatedness argument, if error, would not have satisfied the prejudice prong of the *Strickland* test.

Rather, the government's entire argument is directed to the first prong of the *Strickland* test, specifically urging that there is no merit to Breckenridge's relatedness claim. Thus, the government contends that because Breckenridge's offenses were not related, his attorney's failure to argue relatedness did not fall below an objective standard of reasonableness. The government does not attribute defense counsel's failure to argue relatedness in this case to trial strategy or tactics. *See Luchenburg v. Smith,* 79 F.3d 388, 392 (4th Cir.1996) (rejecting the government's argument in a § 2255 case that defense counsel's error was a "tactical decision"). Moreover, the government concedes that in some circumstances, a lawyer's failure to object to the improper grouping of offenses under the Guidelines "should sustain an ineffectiveness claim," but simply asserts that in this case, any claim by defense counsel that the offenses were related would have been "frivolous." Brief of Appellee at 26.

Thus both parties agree that Breckenridge's ineffective assistance of counsel claim turns on, and is inextricably linked with, the validity of the relatedness claim. Accordingly, we now consider that issue.

## III.

The United States Sentencing Guidelines provide that a defendant is a career offender, subject to enhanced punishment, if:

> (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

USSG § 4B1.1. Breckenridge concedes that he was at least 18 years old when he committed the instant offense and that it was a controlled substance offense. Thus, his sole ground for claiming that he is not a "career offender" is based on § 4B1.1(3).

Breckenridge asserts that the six breaking and entering convictions are related. If they are related, Breckenridge would have had only one prior felony conviction and thus would be ineligible for "career offender" status under USSG § 4B1.1(3). This is so because for the purpose of counting a defen-

dant's prior felony convictions under § 4B1.1, the Guidelines direct a sentencing court to look to the provisions of § 4A1.2, which consider prior sentences in related cases as a single sentence. "Prior sentences imposed in unrelated cases are to be counted separately. *Prior sentences imposed in related cases are to be treated as one sentence for purposes of [computing criminal history]*." USSG § 4A1.2(a)(2) (emphasis added). Moreover, an application note promulgated by the Sentencing Commission explains: "[P]rior sentences are considered related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing." USSG § 4A1.2, comment. (n.3).

### A.

■ The five Charlottesville offenses were consolidated not just for sentencing but also, and more significantly, for a single jury trial. Thus, there can be no doubt that they were related under USSG § 4A1.2, comment. (n.3(3)). The government, attempting to escape this conclusion, relies entirely on cases which hold that the mere imposition of concurrent sentences on the same day does not constitute consolidation for sentencing within the meaning of the Guidelines. With that proposition, we have no quarrel. But these are not the facts with which we are presented here. The government does not cite a single case, nor have we found one, in which any court has held that cases *consolidated for trial* were unrelated for purposes of § 4A1.2.

■ The distinction between consolidation for trial and consolidation for sentencing is an important one. Totally unrelated cases may be informally consolidated for sentencing. It seems unlikely that the Sentencing Commission intended such cases to be treated as "related" for purposes of determining a defendant's eligibility for career offender status. For these reasons, as we recently explained in *United States v. Allen,* 50 F.3d 294, 296 (4th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 2630, 132 L.Ed.2d 870 (1995), when "[t]here is no contention ... that the two prior offenses occurred on 'the same

occasion' or 'were part of a single scheme or plan,'" two prior offenses will not be regarded as "consolidated for sentencing" under § 4A1.2 just because the two sentences were imposed during the same hearing on the same day. *See also United States v. Rivers,* 929 F.2d 136, 140 (4th Cir.) ("[s]imply because two convictions have concurrent sentences" and sentencing was consolidated "does not mean the crimes are related") (quoting *United States v. Flores,* 875 F.2d 1110, 1114 (5th Cir.1989)), *cert. denied,* 502 U.S. 964, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991). Rather, in such circumstances, a court must enter a formal order consolidating the cases for sentencing to indicate that the offenses "have some relationship to each other beyond the happenstance of simultaneous sentencing." *Allen,* 50 F.3d at 298.

In *Allen,* we went on to contrast the informal consolidation for sentencing that makes it possible to impose sentences in unrelated crimes at the same hearing, with the requirements necessary for consolidation of offenses for *trial.* We noted that "[o]ffenses cannot be consolidated for one trial where they could not have been brought together in one indictment." *Id.* (citing Fed.R.Crim.P. 8(a)). Many states impose similar standards for the consolidation of cases at trial. *See, e.g.,* Md. R.Crim. P. 4–203; W. Va. R.Crim. P. 8.

■ For example, in the instant case under Virginia law, the five Charlottesville offenses could not have been charged in a single indictment and consolidated for trial (absent the defendant's consent, of which there is no evidence here) unless they were "connected or constitute[d] parts of a common scheme or plan." Va. R.S.Ct. 3A:6(b), 3A:10. In order to meet the "connected" test, the crimes must be "so intimately connected and blended with the main facts adduced in evidence, that they cannot be departed from with propriety." *Kirkpatrick v. Commonwealth,* 211 Va. 269, 176 S.E.2d 802, 806 (1970) (quoting *Walker v. Commonwealth,* 28 Va. (1 Leigh) 574, 576–77 (1829)). "A common scheme or plan is present only if the 'relationship among the offenses ... is dependent upon the existence of a plan that ties the offenses together and demonstrates that the objective of each offense was to contrib-

ute to the achievement of a goal not obtainable by the commission of any of the individual offenses.'" *Spence v. Commonwealth,* 12 Va.App. 1040, 407 S.E.2d 916, 918 (1991). Thus, the very fact that crimes are consolidated for trial demonstrates that they are related and there is no reason to believe the Sentencing Commission would not want them to be so treated for purposes of § 4A1.2.

■ Trial counsel's failure to argue before the sentencing judge that the Charlottesville offenses were related constituted inadequate representation. However, that deficient performance would not rise to a Sixth Amendment violation unless it prejudiced Breckenridge. It prejudiced him only if the Albemarle County offense was also related to the Charlottesville offenses. We thus turn to that question.

### B.

As noted above, offenses are only "related" if they occurred on the same occasion, were part of a single common scheme or plan, or were consolidated for trial or sentencing. § 4A1.2, comment. (n.3). Because the Albemarle offense neither occurred on the same occasion as the others nor was consolidated with the others, it can only be "related" to the Charlottesville offense as part of a common scheme or plan. The Guidelines offer no definition of "common scheme or plan" nor have we ever articulated a comprehensive list of factors to be examined in making this determination.

■ In deciding whether offenses are part of a common scheme or plan, courts have looked to whether the crimes were committed within a short period of time, in close geographic proximity, involved the same substantive offense, were directed at a common victim, were solved during the course of a single criminal investigation, shared a similar *modus operandi,* were animated by the same motive, and were tried and sentenced separately only because of an accident of geography. *See, e.g., United States v. Shewmaker,*

936 F.2d 1124, 1129 (10th Cir.1991) (citations omitted), *cert. denied,* 502 U.S. 1037, 112 S.Ct. 884, 116 L.Ed.2d 788 (1992); *United States v. Chartier,* 933 F.2d 111, 115 (2d. Cir.1991); *United States v. Houser,* 929 F.2d 1369, 1374 (9th Cir.1990). No court has suggested that all of these factors must be present; however, the confluence of only a few of them does not indicate that the crimes share a common plan. For example, although temporal and geographic proximity are significant indicators of a common plan, these factors alone are hardly determinative. Nor does the additional fact that the same motive animated the crimes "convert" them "into related offenses." *United States v. Fonville,* 5 F.3d 781, 785 (4th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1839, 128 L.Ed.2d 466 (1994). Furthermore, that crimes were solved by a single police investigation—if the crimes were discovered by accident and not by a targeted investigation— does not demonstrate that the offenses result from a common plan. *Id.*

■ Our opinion in *Fonville* is instructive here not only because of the factors we held did not compel a finding of a common plan, but also because of a factor that we regarded as important in that determination. In *Fonville,* the defendant robbed a convenience store and eight days later broke into a nearby residence. Although the crimes were animated by the same motive and solved by a single police investigation, we held they were not part of a common plan because they "did not involve similar substantive offenses." *Id.* at 784.[4] Thus, *Fonville* teaches that significant to a finding that crimes are "related" is the fact that they involve "similar substantive offenses." In the instant case, unlike in *Fonville,* Breckenridge's prior convictions were *not* dissimilar substantive offenses; indeed they were more than just similar, they were identical.

Breckenridge maintains that in view of this and that the prior offenses were committed in close proximity, within a short period of time, in the same manner, and for the same

---

**4.** Nor did the prior offenses in *Fonville* meet the relatedness criteria set forth in the other portions of the application note. The offenses were committed on separate occasions and were not con-

solidated for trial or sentencing, as required by USSG § 4A1.2, comment. (n.3(1) or (3)). *See Fonville,* 5 F.3d at 784.

reason, and that five of the offenses were consolidated for trial and the sixth, the Albemarle County offense, would also have been consolidated for trial "but for the fact that it occurred in an adjacent local jurisdiction," a court could only conclude that the prior offenses were part of a common scheme or plan. Unfortunately, however, there are no findings as to two of these facts.

First, there is no finding as to whether the six offenses shared a *modus operandi.* When, as here, multiple substantive offenses of the same kind are attributed to one defendant, the similarity *vel non* of the mode of operation of the various crimes is often critical. *See United States v. Chambers,* 964 F.2d 1250, 1251 (1st Cir.1992) (Breyer, J.);[5] *Chartier,* 933 F.2d at 116. Although Breckenridge asserts that the offenses were "committed in the same manner," the district court could not make findings as to *modus operandi* because of the sparsity of the record before it. On remand, the district court will be able to explore the *modus operandi* of the offenses. If the evidence demonstrates that the sixth offense exhibits the same *modus operandi* as the other five, then in view of the other facts—the same substantive offenses committed close in time and place, and for the same motive—the offenses should be regarded as having been part of a common scheme or plan for purposes of § 4A1.2.

The other factor regarding which there was no fact finding is whether the Albemarle County offense was tried and sentenced separately from the Charlottesville offenses only because of an accident of geography. The Ninth Circuit considered a similar issue in *United States v. Houser,* 929 F.2d at 1373. In *Houser,* on June 7, 1984, one county court convicted the defendant of selling illegal drugs; six weeks later, the court of an adjoining county convicted him of the same substantive offense. *Id.* at 1373. Although there was uncontradicted evidence that Houser's trial for the two drug offenses would have been consolidated "[h]ad both

sales occurred in the same county," *id.* at 1374, the district court refused to treat them as related and instead sentenced the defendant as a career criminal. Noting that the defendant had been "charged and convicted of two offenses merely because geography and not because of the nature of the offenses," the Ninth Circuit held the "sentencing court erred in not treating the two prior convictions as related" for sentencing purposes. *Id.*

In the case at hand, if the district court concludes that evidence supports a finding that all six of Breckenridge's offenses would have been consolidated for trial but for geography, then they, like the prior offenses in *Houser,* should be treated as related for purposes of career offender sentencing. Under Virginia law, such a finding would necessarily mean that the relationship between the Albemarle and the Charlottesville offenses— just as the relationship among the five Charlottesville offenses—"depend[s] upon the existence of a plan that ties the offenses together and demonstrates that the objective of each offense was to contribute to the achievement of a goal not obtainable by the commission of any individual offenses," *Spence,* 407 S.E.2d at 918 (citation omitted). Such offenses should not be counted as unrelated simply because "geography and not ... the nature of the offenses" precluded their consolidation for trial. *Fonville,* 5 F.3d at 785 (quoting *Houser,* 929 F.2d at 1374).

This holding is entirely consistent with *Rivers,* where we concluded that the district court's finding that "[i]t was only an accident of geography" that precluded consolidation of prior crimes "for trial and/or sentencing" was not supported by the record and so was clearly erroneous. 929 F.2d at 138–39 (quotation omitted). *Rivers* did not hold that such a finding, properly supported by the record, would not be grounds for concluding that offenses were related under § 4A1.2, but rather that the district court's findings in that case were without the necessary eviden-

---

5. *Chambers* was decided pursuant to Federal Rule of Criminal Procedure 8(a). However, in formulating the Guidelines the Sentencing Commission was surely familiar with Rule 8(a) and the cases interpreting it and, thus, "[o]ne could reasonably conclude that the Commission" in-

tended the "common scheme or plan" language in the Guidelines to be similarly interpreted. John R. Steer & William W. Wilkins, *Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines,* 41 S.C.L.Rev. 495, 515 (1990).

tiary support. In *Rivers*, the district court did not rely on any of the joinder factors set forth in Fed.R.Crim.P. 8(a) or its Maryland equivalent, Md. R.Crim. P. 4–203, 4–253. Instead, the sole basis for its conclusion was that even though the offenses were tried and sentenced separately, "the concurrent sentences imposed ... were the functional equivalent of a consolidation under the applicable Guidelines." 929 F.2d at 138. We rejected this reasoning as clearly erroneous, noting that it was contrary to *Flores*, 875 F.2d at 1114, and application note 3 of § 4A1.2, which explain that the mere fact that a defendant receives concurrent sentences for two crimes does not render the crimes related for the purpose of determining his status as a career offender.

We do not here sanction a contrary conclusion; a court is not entitled to conclude that offenses are related simply because concurrent sentences were imposed. However, if a court should conclude that an offense committed in one county was "connected or constitute[d] part of a common scheme or plan" with an offense committed in an adjoining jurisdiction so that—but for an accident of geography—they would have been consolidated for trial, Va. R.S.Ct. 3A:6(b), 3A:10, then the offenses should also be related for purposes of USSG § 4A1.2.

## IV.

If, on remand, the district court finds that the Albemarle County offense neither shared the same *modus operandi* as the Charlottesville offenses nor would have been consolidated for trial with them but for an accident of geography, then the offenses cannot be regarded as related for purposes of sentencing as a career offender. Counsel's error in failing to raise the relatedness question will have resulted in no prejudice to Breckenridge and no further relief is warranted. On the other hand, if the district court finds the six offenses share the same *modus operandi*, or would have been consolidated for one trial but for an accident of geography, then coun-

sel's error in failing to raise the relatedness question will have severely prejudiced Breckenridge and so constituted constitutionally ineffective assistance of counsel. Under these circumstances, Breckenridge is entitled to resentencing within the appropriate guideline range.

There is no need for us to vacate Breckenridge's sentence at this time. The district court can do so should it determine resentencing is necessary. The case is remanded to the district court for further proceedings consistent with this opinion.[6]

*REMANDED.*

---

**6.** At our request, the parties filed supplemental briefs after oral argument addressing the effect on this case, if any, of the recently enacted Antiterrorism and Effective Death Penalty Act of

1996, PL 104–132, 110 Stat. 1214 (April 24, 1996). They have concluded, and we agree, that the statute has no effect on this case.