UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

JOSEPH BYRD, JR.,
        *Defendant-Appellant.*

No. 00-4265

Appeal from the United States District Court
for the District of South Carolina, at Greenville.
Henry M. Herlong, Jr., District Judge.
(CR-98-998)

Argued: December 4, 2002

Decided: January 6, 2003

Before NIEMEYER and LUTTIG, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

---

Vacated and remanded with instructions by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Andrew David Grimes, ANDREW D. GRIMES, P.A., Summerville, South Carolina, for Appellant. Thomas Ernest Booth, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** J. Strom Thurmond, Jr., United States Attorney, A. Bradley Parham, Assistant United States Attorney, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Joseph Byrd, Jr. (Byrd) appeals his sentence imposed by the district court following his guilty plea to conspiracy to possess with intent to distribute and to distribute a "quantity" of cocaine and a "quantity" of cocaine base (crack), 21 U.S.C. §§ 841(a)(1) and 846. (J.A. 9). Although Byrd challenges his sentence on numerous fronts, he principally argues that his sentence violated the dictates of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and that the district court erred when it sentenced him as a career offender, United States Sentencing Commission, *Guidelines Manual*, (USSG) § 4B1.1, because his two prior state felony drug offenses were related as part of a single common scheme or plan and thus constituted one conviction instead of the two convictions necessary for career offender status. For the reasons stated below, we reject Byrd's *Apprendi* arguments, but nevertheless vacate his sentence and remand the case to the district court with instructions to determine whether Byrd's two prior state felony drug offenses were related as part of a single common scheme or plan by applying the factors set forth in *United States v. Breckenridge*, 93 F.3d 132 (4th Cir. 1996).

I

A

In January 1998, an informant told Drug Enforcement Administration (DEA) agents that Byrd was a cocaine dealer and that he was storing cocaine at a Storage Trust Company storage unit (Unit #730) in Greenville, South Carolina. On May 6, 1998, a drug detection dog alerted on Unit #730, which was rented to Macy Byrd, Byrd's aunt. On May 8, 1998, the DEA agents executed a search warrant at Unit #730 and seized numerous plastic baggies that contained a residue that subsequently tested positive for cocaine.

On November 16, 1998, Byrd entered Unit #730 three times. On November 20, 1998, the DEA agents executed a second search warrant at Unit #730 and seized 3.25 kilograms of cocaine, $70,020 in cash, five one-kilogram shells containing cocaine residue, and two sets of scales. Byrd's fingerprints were subsequently detected on the scales.

After the search, Everette Byrd (Everette) and Frank Henderson (Henderson) arrived at the unit. After they arrived, Everette got out of the car, unlocked the door to Unit #730, and went inside. While Everette was entering the storage unit, Henderson stayed in the car. Subsequently, the DEA agents arrested both of them. Thereafter, the DEA agents searched Everette's residence and seized 69.77 grams of crack, 64.26 grams of marijuana, $3,500 in cash, an electronic scale, and three firearms.

B

On December 15, 1998, a federal grand jury sitting in the District of South Carolina indicted Byrd and Everette on two counts. Count One charged the defendants with conspiracy to possess with the intent to distribute and to distribute a "quantity" of cocaine and a "quantity" of crack, 21 U.S.C. §§ 841(a)(1) and 846. (J.A. 9). Count Two charged the defendants with possession with the intent to distribute a "quantity" of cocaine, 21 U.S.C. § 841(a)(1). (J.A. 10).

Byrd's trial began on November 8, 1999. On November 9, 1999, Byrd pled guilty to the conspiracy count. During the plea hearing, the government presented a brief summary of its evidence against Byrd.

In preparation for sentencing, a United States Probation Officer prepared a Presentence Investigation Report (PSR). According to the PSR, Byrd's base offense level was thirty-two, which was based on 11.05 kilograms of cocaine, USSG § 2D1.1(c)(4). The 11.05 kilograms of cocaine was based on the items recovered from Unit #730 on November 20, 1998; specifically, the 3.25 kilograms of cocaine, the five one-kilogram shells which contained cocaine residue, and the $70,020 in cash (the equivalent of 2.8 kilograms of cocaine). Because the PSR determined that Byrd was a career offender, Byrd's offense level was thirty-seven, *id.* § 4B1.1(A) (offense level of thirty-seven if

the statutory maximum sentence for the offense of conviction is life). According to the PSR, Byrd's career offender status was based on his two prior state felony drug convictions for distribution of cocaine and the fact that his instant offense of conviction carried a maximum sentence of life under 21 U.S.C. § 841(b)(1)(A) (providing a statutory maximum sentence of life for an offense involving at least five kilograms of cocaine). With regard to Byrd's two prior state felony drug convictions, the first offense involved a cocaine sale on June 30, 1989 to an undercover agent of the Greenville, South Carolina Police Department at the C & C garage on Green Avenue in Greenville. The second offense involved a cocaine sale to ostensibly the same undercover agent on July 7, 1989 at the Jetco Station on Green Avenue in Greenville. Byrd was arrested for both offenses on December 2, 1989 and was charged in two separate indictments in General Sessions Court in Greenville. Byrd pled guilty to both indictments and, on June 26, 1990, was sentenced to concurrent terms of seven years' imprisonment. Byrd was paroled in November 1991.

Byrd's offense level was reduced by two levels for acceptance of responsibility; consequently, Byrd's offense level of thirty-five, coupled with his criminal history category of six, resulted in a Sentencing Guidelines range of 292 to 365 months' imprisonment.

Byrd objected to the PSR's drug quantity and career offender recommendations. At sentencing, the district court overruled Byrd's objection to the PSR's drug quantity determination on the ground that the PSR's recommendation was supported by substantial evidence, including Byrd's fingerprints on the scales. Without addressing the factors set forth in *Breckenridge*, the district court overruled Byrd's objection to the PSR's career offender determination on the ground that Byrd's prior state drug felony offenses were "separate." (J.A. 40). The district court then sentenced Byrd to a term of imprisonment of 365 months, a term of supervised release of five years, and a special assessment of $100. On March 27, 2000, Byrd noted a timely appeal.

II

We first consider whether Byrd's sentence is invalid under the Supreme Court's decision in *Apprendi*, which was decided while this case was pending on appeal. Byrd did not raise this issue before the

district court, so we apply the plain error standard of review. *United States v. Carter*, 300 F.3d 415, 428-29 (4th Cir.) (discussing application of the *United States v. Olano*, 507 U.S. 725 (1993), plain error standard to *Apprendi* claims not raised in the district court), *cert. denied*, 2002 WL 31511362 (U.S. December 2, 2002).

The indictment to which Byrd pled guilty did not specify a particular threshold drug quantity. Further, drug quantity was determined by the district court at sentencing. Because Byrd received a sentence of 365 months, five months above the thirty-year statutory maximum for a violation of 21 U.S.C. § 841 where there is no jury finding of a specific threshold drug quantity and the defendant has a prior felony drug offense, *id.* § 841(b)(1)(C), it is clear that an error occurred in sentencing Byrd and that the error was plain. *United States v. Promise*, 255 F.3d 150, 156-60 (4th Cir. 2001) (*en banc*), *cert. denied*, 122 S. Ct. 2296 (2002).

We find, however, that any resulting error did not "'seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings,'" *Olano*, 507 U.S. at 736 (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)), based on the overwhelming and essentially uncontroverted evidence presented at the guilty plea hearing and at sentencing indicating that Byrd was responsible for far more than the 500 grams of cocaine necessary to sentence him under 21 U.S.C. § 841(b)(1)(B), which authorizes a forty-year maximum term of imprisonment. *United States v. Cotton*, 122 S. Ct. 1781, 1786 (2002).[1]

We also note that, in light of the indictment's failure to allege drug quantity, the district court, without having the benefit of the Supreme Court's decision in *Apprendi*, incorrectly informed Byrd that he faced a possible sentence of a minimum of not less than ten years and a maximum of life imprisonment. Under 21 U.S.C. § 841(b)(1)(C), there is no mandatory minimum, and the maximum possible sentence is thirty years where the defendant has a prior felony drug offense. Thus, in retrospect, the district court violated Rule 11(c)(1) of the

---

[1] We also find no merit to Byrd's contention that the district court clearly erred when it found that he was accountable for 11.05 kilograms of cocaine for purposes of calculating his offense level under the Sentencing Guidelines.

Federal Rules of Criminal Procedure. *United States v. Martinez*, 277 F.3d 517, 530 (4th Cir.), *cert. denied*, 123 S. Ct. 200 (2002). We find that Byrd cannot establish plain error in this regard, however, because he cannot show that he would not have pled guilty absent this error. *Id.* at 533.

Finally, under our circuit precedent, we must reject Byrd's claims that 21 U.S.C. § 841 is unconstitutional after *Apprendi*, *United States v. Chong*, 285 F.3d 343, 346-47 (4th Cir. 2002) (21 U.S.C. § 841 is facially constitutional), and that *Apprendi* requires the government to plead a defendant's prior convictions in the indictment, *United States v. Cristobal*, 293 F.3d 134, 147-48 (4th Cir.) (*Apprendi* does not require prior convictions to be pleaded or proven), *cert. denied*, 123 S. Ct. 396 (2002).

## III

We next consider Byrd's contention that he was improperly sentenced as a career offender because his two prior state felony drug offenses, one occurring on June 30, 1989 and the other occurring on July 7, 1989, were related as part of a single common scheme or plan and thus constituted one conviction instead of the two convictions necessary for career offender status. The district court held that the two offenses were separate offenses. Our review of the district court's Sentencing Guidelines determinations is deferential. *Buford v. United States*, 532 U.S. 59, 60 (2001).

Under USSG § 4B1.1, a defendant is a career offender if

(1) the defendant was at least 18 years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

*Id.* § 4B1.1.

Byrd meets the first two conditions of USSG § 4B1.1 because he was eighteen years old at the time he committed the instant offense

of conviction and because the instant offense of conviction is a felony that is a controlled substance offense. The point of contention between the parties is whether Byrd has at least two prior felony convictions for a controlled substance offense.

The term "two prior felony convictions" is defined in USSG § 4B1.2(c) as follows:

> The term "two prior felony convictions" means (1) the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense (*i.e.*, two felony convictions of a crime of violence, two felony convictions of a controlled substance offense, or one felony conviction of a crime of violence and one felony conviction of a controlled substance offense), and (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of § 4A1.1(a), (b), or (c).

*Id.* § 4B1.2(c). There is no dispute that Byrd has at least two prior felony convictions for a controlled substance offense. The issue is whether the sentences for the two prior controlled substance offenses are counted separately under the provisions of USSG § 4A1.1(a), which awards three criminal history points for each "prior sentence of imprisonment exceeding one year and one month." *Id.* § 4A1.1(a).

USSG § 4A1.2(a)(2) instructs us that "[p]rior sentences imposed in unrelated cases are to be counted separately." *Id.* § 4A1.2(a)(2). However, "[p]rior sentences imposed in related cases are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c)." *Id.* § 4A1.2(a)(2). In Application Note 3 to USSG § 4A1.2, the term "related cases" is defined in relevant part as follows:

> Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (*i.e.*, the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single

common scheme or plan, or (C) were consolidated for trial
or sentencing.

*Id.* § 4A1.2, comment. (n.3).

In this case, Byrd's two prior state felony drug offenses were not
separated by an intervening arrest. Further, the "same occasion" prong
does not apply because the conduct underlying Byrd's first prior
offense did not occur on the same occasion as the conduct underlying
Byrd's second prior offense. From the record before this court, one
cannot find that the "consolidation" prong applies because the record
contains no materials from Byrd's state court offenses except for the
information used in the PSR. Thus, Byrd must establish that his prior
offenses were part of a single common scheme or plan for this court
to conclude that his two prior state felony drug offenses were related.

Although there is a split in the circuits as to the proper test for
determining when prior offenses are part of a single common scheme
or plan, *compare United States v. Ali*, 951 F.2d 827, 828 (7th Cir.
1992) (holding that prior offenses are part of the same scheme or plan
only if the prior offenses were jointly planned or, at a minimum, the
commission of one offense necessarily required the commission of
another), *with Breckenridge*, 93 F.3d at 138-40 (applying eight-factor
test), this court has identified eight factors for district courts to con-
sider in determining whether prior offenses are part of a single com-
mon scheme or plan: (1) commission within a short period of time;
(2) close geographic proximity; (3) same substantive offenses; (4)
directed at a common victim; (5) solved in a single criminal investiga-
tion; (6) similar *modus operandi*; (7) animated by the same motive;
and (8) tried and sentenced separately only because of an accident of
geography. *Breckenridge*, 93 F.3d at 138.

In explaining how these factors should be applied, *Breckenridge*
states that all eight factors do not have to be present for there to be
a common scheme or plan. *Id. Breckenridge* also notes that the most
significant factors to a finding that prior offenses are related are tem-
poral proximity, geographic proximity, and being the same substan-
tive offense. *Id.*

In this case, the district court did not apply the *Breckenridge* fac-
tors; rather, without addressing the *Breckenridge* factors, the district

court overruled Byrd's objection to the PSR's career offender determination on the ground that Byrd's prior state drug felony offenses were "separate." (J.A. 40).

The district court's failure to apply the *Breckenridge* factors or to give reasons supporting its conclusion that Byrd's two prior state felony drug offenses were "separate," *id.*, makes meaningful appellate review of Byrd's *Breckenridge* claim inappropriate at this time. The more prudent course here is to vacate Byrd's sentence and remand the case to the district court with instructions to apply the *Breckenridge* factors to Byrd's two prior state felony drug offenses.

IV

For the reasons stated herein, we vacate Byrd's sentence and remand the case to the district court with instructions to the district court to determine whether Byrd's two prior state felony drug offenses were related as part of a single common scheme or plan by applying the factors set forth in *Breckenridge*. If after applying the *Breckenridge* factors the district court concludes that Byrd's two prior state felony drug offenses are not related, the district court may reimpose the same career offender sentence it imposed at Byrd's original sentencing. However, if the district court concludes that Byrd's two prior state felony drug offenses are related, Byrd may not be sentenced as a career offender and must be resentenced within the appropriate Sentencing Guidelines range.[2]

*VACATED AND REMANDED WITH INSTRUCTIONS*

---

[2]Byrd also claims that he received constitutionally ineffective assistance of counsel in the district court. Because the record does not conclusively establish that Byrd's counsel was constitutionally ineffective, this claim is not cognizable on direct appeal and must be raised under 28 U.S.C. § 2255. *United States v. Richardson*, 195 F.3d 192, 198 (4th Cir. 1999), *cert. denied*, 528 U.S. 1096 (2000). Finally, we have reviewed the additional claims raised by Byrd in his *pro se* supplemental brief and find those additional claims to be without merit.