**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 04-4927**

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

WILLIAM STEVEN HURLEY,

Defendant - Appellant.

———————

Appeal from the United States District Court for the Middle District of North Carolina, at Durham.  Frank W. Bullock, Jr., District Judge.  (CR-04-42)

———————

Submitted:  March 21, 2006          Decided:  April 11, 2006

———————

Before WILLIAMS, KING, and GREGORY, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

Robert J. McAfee, New Bern, North Carolina, for Appellant.  Anna Mills Wagoner, United States Attorney, Clifton T. Barrett, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

William Hurley appeals his conviction and 288-month sentence following a jury trial on a charge of possession with the intent to distribute in excess of fifty grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). We find no error and affirm Hurley's conviction and sentence.

I.

On October 10, 2003, Detective Renee Melly of the Winston-Salem Police Department was conducting drug interdiction with her K-9 at a Federal Express ("FedEx") processing facility. After watching numerous packages pass along the conveyer belt, Detective Melly observed a package that she suspected might contain narcotics. Subsequently, Detective Melly removed the package from the belt and placed it next to three similar looking parcels, at which point, her K-9 alerted on the suspicious package.

The package's label indicated that the intended recipient was "Brian Painland" at the address "9510 R.J. Moore Road, Tobaccoville, North Carolina, 27050." The label also identified the sender of the package as "Miguel Espinoza, Boulevard Postal Stop N' Services, 15030 Ventura Boulevard, Sherman Oaks, California, 91403." J.A. 44-47. Shortly after the K-9 alerted on the package, Detective Melly applied for and received a search warrant. Pursuant to the search warrant, officers opened the

2

package and discovered two heat sealed fish oil supplement bottles. Subsequent field testing revealed that the bottles actually contained 439 grams of methamphetamine.

After placing the bottles back into the package and resealing it, the officers undertook a controlled delivery, whereby Detective Melly, disguised as a FedEx employee, traveled to 9510 R.J. Moore Road in an unmarked van. When Detective Melly's knocks went unanswered, she left the package on the front porch and joined several other officers in a stake-out of the house. Several hours later, the officers observed a Nissan X-Terra pull into the driveway of the house where they had delivered the package. A white male, later identified by the officers as defendant Hurley, exited the vehicle, walked up to the porch, retrieved the package, returned to his vehicle, and drove away.

After following the defendant for a short time, a marked patrol unit stopped the defendant's vehicle and arrested him. During a search of the vehicle incident to the arrest, detectives seized, among other things, the following items from the vehicle: (1) the package containing 439 grams of methamphetamine; (2) electronic scales; (3) a lighter and a butane torch; (4) two cell phones; (5) a 150-foot roll of aluminum foil; (6) two sets of binoculars; (7) a spiral-bound notebook containing the same contact telephone number for Brian Painland as the FedEx label and the name "Johnny Blikian."

Before trial, Hurley moved to suppress the evidence of the package containing methamphetamine. The Government opposed the motion on the grounds that Hurley did not have standing to contest the propriety of the search. At the suppression hearing, Hurley testified that he had provided the alias Brian Painland and the address 9510 R.J. Moore Road to the individual who had shipped the methamphetamine from California. Hurley indicated that he had never used this alias before. Further, Hurley testified that he had called to the FedEx office the day before his arrest to inquire about the package's delivery status.[1] During this call, Hurley identified himself as Brian Painland and made arrangements for FedEx to re-attempt delivery at 9510 R.J. Moore Road the next day. Hurley admitted that he did not go to the FedEx processing center to retrieve the package that day because he did not have any identification in the name Brian Painland. Further, Hurley admitted that the contact number listed in the spiral notebook and on the package for Brian Painland was actually a contact number for his associate, Johnny Blikian, and not for Hurley himself.

Although Hurley initially testified that 9510 R.J. Moore Road was a friend's rental property and that he had received the owner's permission to receive mail there, he later admitted that his friend did not live at the rental property and that he did not know the

_____

[1]Apparently, FedEx had previously attempted a delivery but was unable to find the address because there was no number on the house.

4

person (or persons) who did.  The district court denied the motion to suppress concluding that to the extent that Brian Painland was a "one-time alias" of the defendant, and that the package was delivered to an address with which the defendant had no association, Hurley did not have a legitimate expectation of privacy in the package or its contents.

At sentencing, the district court determined that Hurley's nine prior armed robbery convictions, which were imposed in four prior sentences, qualified Hurley for career offender status under U.S. Sentencing Guidelines Manual § 4B1.1 (2004).  Accordingly, the district court assigned Hurley a Criminal History Category VI. Combining Hurley's criminal history with a Total Offense Level of 34, the court calculated Hurley's guideline range to be 262 to 327 months.  The district court sentenced Hurley to a term of imprisonment of 288 months.

II.

A.

Hurley first contends that the district court erred in denying his motion to suppress the contents of the package on the basis that he lacked standing to challenge the search.[2]  We review the

[2]Although the defendant initially asserted in his opening brief that he had not been provided with a copy of the transcript of the suppression hearing, Hurley notes in his reply brief that the Government subsequently provided him with a copy of the transcript and that it is part of the record of the proceedings

5

district court's legal conclusions underlying its denial of a motion to suppress de novo and review factual findings for clear error. United States v. Johnson, 400 F.3d 187, 193 (4th Cir.), cert. denied, 126 S. Ct. 134 (2005). The evidence is construed in the light most favorable to the party prevailing below. United States v. Seidman, 156 F.3d 542, 547 (4th Cir. 1998).

Both the sender and the designated recipient of a package sent by mail or other carrier have a legitimate expectation of privacy in the contents of that package. See United States v. Jacobsen, 466 U.S. 109, 114 (1984). Thus, Hurley has standing to contest the validity of the search only if he can demonstrate that he was the designated recipient of the package. This he cannot do. Although Hurley testified that he had instructed the sender to ship the package to an addressee named Brian Painland, he admitted that he had personally never used this alias before. Indeed, Hurley testified that he did not pick up the package from the FedEx facility because he did not have any identification in the name Brian Painland. Hurley further testified that the telephone contact number for Brian Painland listed in his notebook and on the FedEx label was a contact number for his associate, Johnny Blikian, and not for him. Finally, Hurley testified that he did not reside at the address to which he had the package delivered, nor did he know the person (or persons) who did. Accordingly, the district

below.

court correctly rejected Hurley's claim that he had a legitimate expectation of privacy in the package or its contents and thus appropriately denied his motion to suppress for lack of standing.

B.

Hurley next contends that the evidence was insufficient to support his conviction for violating 21 U.S.C. § 841(a)(1).  In reviewing a sufficiency challenge, "the verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it."  Glasser v. United States, 315 U.S. 60, 80 (1942). "Substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc).

In evaluating the sufficiency of the evidence, we do not "weigh the evidence or review the credibility of the witnesses." United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997).  Where the evidence supports differing reasonable interpretations, the jury decides which interpretation to believe. Id.  Furthermore, "the Supreme Court has admonished that we not examine evidence in a piecemeal fashion, but consider it in cumulative context." Burgos, 94 F.3d at 863 (citations omitted).  "The focus of appellate review, therefore, . . . is on the complete picture,

7

viewed in context and in the light most favorable to the Government, that all of the evidence portrayed." Id.

To prove possession with the intent to distribute methamphetamine, the Government must establish that (1) the defendant possessed methamphetamine; (2) the defendant had knowledge of his possession; and (3) the defendant intended to distribute the methamphetamine. See id. at 873. A jury can infer an intent to distribute from the defendant's possession of a large quantity of drugs and drug-packaging paraphernalia. United States v. Collins, 412 F.3d 515, 519 (4th Cir. 2005). Although the defendant contends that the evidence was insufficient to support elements two and three (knowledge and intent), this argument is unavailing. The evidence presented at trial, particularly the suspicious circumstances by which the defendant came into possession of the package, the large quantity of methamphetamine in the package, and the drug paraphernalia in the defendant's car, would allow a reasonable jury to infer both knowledge and intent and thus convict Hurley of possession of methamphetamine with the intent to distribute. In sum, after reviewing the evidence in the light most favorable to the Government, we conclude that substantial evidence supports the conviction.

C.

Next, Hurley contends that the district court erred in its application of U.S. Sentencing Guidelines Manual § 4B1.1, the career offender enhancement. In 1980, Hurley was convicted of committing nine separate armed robberies. The sole issue before us in connection with Hurley's career offender status is whether the district court erred in finding that the robberies were separate offenses for sentencing purposes, and not part of a common plan or scheme. See U.S.S.G. § 4A1.2, cmt.

In reviewing the district court's application of the Guidelines, we accept the findings of fact of the district court unless they are clearly erroneous and give due deference to the court's application of the Guidelines to the facts. United States v. Cutler, 36 F.3d 406, 407 (4th Cir. 1994). The defendant has the burden of proving the existence of a common scheme. United States v. Joy, 192 F.3d 761, 771 (7th Cir. 1999); United States v. Cowart, 90 F.3d 154, 159 (6th Cir. 1996). The relevant factors in deciding whether offenses are part of a single common scheme or plan are whether the crimes: (1) were committed within a short period of time; (2) were committed in close geographic proximity; (3) involved the same substantive offense; (4) were directed at a common victim; (5) were solved during the course of a single criminal investigation; (6) shared a similar modus operandi; (7) were animated by the same motive; and (8) were tried and sentenced

9

separately only because of an accident of geography. United States v. Breckenridge, 93 F.3d 132, 138 (4th Cir. 1996) (citations omitted). Not all of these factors must be present for there to be a common scheme or plan, nor does the presence of a few of them require that finding. Id.

Although two of the above factors weigh in the defendant's favor--the nine armed robberies constituted the same substantive offense and shared a similar modus operandi--the remaining six factors cut against his argument that they constituted a common scheme of plan. Indeed, the record indicates that Hurley robbed several unrelated victims in multiple counties over a protracted 82-day period. Further, the robberies were not solved by a single investigation and the offenses were not tried and sentenced separately only because of an accident of geography. Accordingly, we conclude that the district court did not err in rejecting the defendant's argument that the armed robberies were part of a common scheme or plan and thereby applying the career offender enhancement.

### D.

Finally, the defendant contends that the district court committed plain error by failing to consider the Guidelines as advisory, rather than mandatory. While the mandatory application of the Guidelines constitutes plain error, United States v. White,

405 F.3d 208, 217 (4th Cir.), <u>cert.</u> <u>denied</u>, 126 S. Ct. 668 (2005), a defendant who seeks resentencing on this ground must show actual prejudice, i.e., a "nonspeculative basis for concluding that the treatment of the Guidelines as mandatory 'affected the district court's selection of the sentence imposed.'" <u>Id.</u> at 223 (quoting <u>Williams v. United States</u>, 503 U.S. 193, 203 (1992)). The record is devoid of any evidence that the district court desired to sentence Hurley below the applicable Guidelines range. To the contrary, the district court indicated that a sentence in the middle of the range was appropriate, given the nature of the offense and the need to protect the public. Indeed, the district court declined to exercise its discretion under the mandatory Guidelines regime to impose sentence at the low end of the Guidelines range. Thus, since Hurley cannot show that the district court would have imposed a lesser sentence under an advisory Guidelines regime, he has failed to establish plain error.

## III.

For the foregoing reasons, we affirm Hurley's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

<u>AFFIRMED</u>

11